Argued and submitted November 14, 1980, affirmed February 17, 1981

# GREENWADE et ux,
## *Respondents, Cross-Appellants,*
### *v.*
# CITIZENS BANK OF OREGON,
## *Appellant.*

### (No. 77-4405, CA 17310)

624 P2d 610

Stuart M. Brown, Eugene, argued the cause for appellant. With him on the briefs was Young, Horn, Cass & Scott, Eugene.

Monte C. McKeehen, Eugene, argued the cause for respondents, cross-appellants. With him on the briefs was Joseph, Gudger & McKeehen, Eugene.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

JOSEPH, P.J.

## JOSEPH, P.J.

Defendant, an Oregon banking corporation, appeals from a judgment for plaintiffs in an action at law for breach of an alleged oral agreement accompanying a real estate construction loan transaction. Defendant assigns as error (1) the denial of defendant's motion to strike evidence of the oral agreement under the parol evidence rule and (2) the denial of defendant's motion for directed verdict, made on the grounds (a) that if the motion to strike were granted there was insufficient evidence of the contract claimed to be breached and (b) that defendant's conduct was not the legal cause of plaintiffs' claimed damages.

Plaintiffs contracted with a builder to construct a residence in Lane County. The earnest money agreement stated that the purchase price was

"Thirty-five thousand nine hundred dollars ($35,900.00) payable as follows: from loan proceeds to be obtained by purchaser. *** Home to be built on a cost-plus basis, according to existing plans."

Plaintiffs obtained a construction loan of $34,800 from defendant in exchange for a promissory note secured by a trust deed on the property.

The disclosure statement for the real estate loan contains a reference to a one percent charge, $348, labeled "construction loan fee," which plaintiffs paid to defendant. One of the plaintiffs testified that this fee was consideration for an oral promise, made by defendant through its loan officer prior to signing of the written documents, that it would manage the loan fund to ensure that disbursements were made commensurate with the stage of completion of the building. According to that testimony, the duties arising from the oral agreement included an obligation to disburse loan funds to the contractor only after consulting plaintiffs and inspecting the property and an obligation to obtain from the builder a guarantee that the house would be built for an amount not exceeding the loan.

Defendant contends that the construction loan fee was routinely charged and required the bank only to manage the loan fund by making payments to the contractor at its discretion. Inspections were made by defendant bank on

November 12, 1973, showing the house 22 percent completed; on December 12, showing 47 percent completed; January 9, 1974, showing 53 percent completed; and on February 8, showing 68 percent completed. Disbursements to the contractor were made on November 16, $5,414.57; December 11, $5,458.76; January 9, $9,601.00; and February 7, $12,174.92.

On February 7, 1974, one of defendant's employees called plaintiffs to report that a final disbursement of approximately $12,000 was about to be made that would deplete the loan funds. Plaintiffs objected and requested a meeting prior to the payment, but the disbursement was nonetheless made the same day. Thereafter, plaintiffs, the builder and defendant met to discuss financing alternatives involving additional loans to plaintiffs from defendant to allow completion of the building. Plaintiffs rejected them.

At the time of the February disbursement, plaintiffs had not paid the first installment due on the loan on February 1, 1974. According to testimony of a bank employee, defendant's policy was to charge a penalty for late payments, but not immediately to declare the note in default. After the final disbursement on February 7, plaintiffs refused to tender any loan repayments, and defendant eventually foreclosed the trust deed and sold the property. Plaintiffs then brought this action for breach of the oral agreement, claiming damages for loss of the fair market value of the property and for expenditures incurred by plaintiffs in beginning the project, including the down payment and additional cash to close the loan. At trial, the jury verdict awarded plaintiffs $19,389.97.

■■ To determine whether the parol evidence rule, codified in ORS 41.740,[1] operates to bar admission of a

_____

[1] ORS 41.740 provides:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except where a mistake or imperfection of the writing is put in issue by the pleadings or where the validity of the agreement is the fact in dispute. However this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in ORS 42.220, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud. The term 'agreement' includes deeds and wills as well as contracts between parties."

prior oral agreement extrinsic to a related written agreement, the trial court judge must decide if the intent of the parties was that the writing be a complete and full integration of the agreement between the parties. *Hatley v. Stafford,* 284 Or 523, 533, 588 P2d 603 (1978). Under a test deriving from the Restatement of Contracts § 240,[2] even though there is a later, written, apparently "integrated" agreement, the court may admit evidence of a prior oral agreement if the oral terms are "not inconsistent" with the written terms *and* if (1) the oral agreement was made for a separate consideration, *or* (2) if the oral agreement is, when the surrounding circumstances are considered, such as might "naturally" be made as a separate agreement by parties situated as were the parties to the written agreement. *Hatley v. Stafford, supra* 284 Or at 528; *see also, Caldwell et al v. Wells,* 228 Or 389, 395, 365 P2d 505 (1961). The oral agreement is deemed to be consistent with the written one unless it contradicts an express provision in the writing. *Hatley v. Stafford, supra,* 284 Or at 533.

■   Four separate documents were executed at the time of the loan transaction on July 9, 1973:   a loan application agreement, a disclosure statement for the loan, a promissory note and a trust deed. Defendant asserts that these documents together encompass the complete written agreement.[3] Because none of the documents contains any language expressly providing that the documents were meant to be a complete and full integration of the parties' agreement, defendant relies on the presumption that a

---

[2] Restatement of Contracts, § 240 provides in relevant part:

"IN WHAT CASES INTEGRATION DOES NOT AFFECT PRIOR OR CONTEMPORANEOUS AGREEMENTS.

"(1) An oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration, nor a written agreement by a subsequent integration relating to the same subject-matter, if the agreement is not inconsistent with the integrated contract, and

"(a) is made for separate consideration, or

"(b) is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract."

[3] Whether multiple documents may constitute a final integrated written agreement in the absence of integrating language has not been raised by the parties in this appeal, and we do not address it.

written agreement is a complete integration. *Hatley v. Stafford, supra,* 284 Or at 535. There is no direct evidence of the parties' intent whether the writings were their entire agreement. We therefore turn to the Restatement test, *supra* note 2, to determine whether the trial court properly admitted evidence of the oral agreement.

Defendant contends that the burdens imposed by the oral agreement are inconsistent with the authority of the bank contained in paragraph four of the real estate loan application agreement:

> "You [i.e., defendant] are authorized to pay off existing mortgages, take up deeds necessary to put title in my name, pay assessments, pay delinquent taxes, pay liens, and do whatever is necessary to place the mortgage in first lien position, *charging all disbursements against the loan, and I [i.e., plaintiffs] will pay you any additional amount required."* (Emphasis supplied.)

None of the loan transaction documents expressly sets forth the obligations of the bank in managing the loan fund. As in *Hatley v. Stafford, supra,* 284 Or at 533-34, we do not define the term "inconsistent" as broadly as would defendant here. Defendant cites *Deering v. Alexander,* 281 Or 607, 611, 576 P2d 8 (1978), for the proposition that additional burdens imposed by an oral agreement are, *per se,* inconsistent with the final writing, but in *Deering,* the terms of the oral agreement were contrary to obligations *expressly* set forth in the writing. That is not the case here. 3 Corbin, Contracts § 581-585 (1960), contains what has been characterized as the "clearest explanation" of the "preferred version" of the parol evidence rule, *Pio v. John B. Gilliland Const.,* 276 Or 975, 985, 560 P2d 247 (1967) (Denecke, C.J., specially concurring). As noted by Corbin,

> "The proof of a provision that is merely 'additional' neither contradicts nor varies the writing; it merely shows that the writing does not express the entire agreement actually made and is not a complete integration thereof." § 584 at 480.

*See also, DeVore v. Weyerhaeuser Co.,* 265 Or 388, 403-04, 508 P2d 220 (1973), *cert den* 415 US 913 (1974).

Assuming *arguendo* that there was no separate consideration for the oral agreement,[4] we turn to the second part of the Restatement test: the intent of the parties as indicated by all the circumstances. In discussing the Restatement test, Corbin states in part, § 584 at 480:

"Observe, secondly, that Clause (b) states that the oral agreement is not superseded by the writing if it is 'such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract.' This requires the court to determine what would be 'natural' and what would not. The party offering the parol evidence always asserts and offers to prove that these very parties under the existing circumstances in fact made the 'oral agreement.' Should he not always be allowed to show that what they in fact did was 'natural'? Even if it was not 'natural,' the evidence is offered to prove that the parties in fact made the oral agreement and that they did not execute the writing as a complete 'integration.' The parol evidence rule purports only to exclude evidence in case there is an 'integration' that the evidence is offered to contradict or vary. *** *Whether or not it was 'natural' for the parties to do as they did bears only on the credibility of the evidence offered. This form of language makes the admissibility of an added but not inconsistent term practically discretionary with the court.*" (Emphasis supplied.)

The trial judge here made the following observations in colloquy prior to his denial of the motion to strike:

"THE COURT: Well, but of course factually that's what we do have. We have the unrebutted evidence that a bank officer failed to follow policies of the bank and it resulted in loss, not only to the bank, but the plaintiffs' claimed loss to them.

"* * * * *

"THE COURT: Well, suppose the [plaintiffs] had said to [the bank officer], 'What do we get for our Three Hundred and Eighty-four Dollars that you are charging us'? What would he say?

"[COUNSEL FOR DEFENDANT]: 'I get bills and review them and write checks and a lot more paper work than if I just put the money in your account.'

---

[4] The construction loan fee is expressly included in the loan application agreement and disclosure statement. Given our disposition of the parol evidence issue, however, it is not necessary to discuss the element of separate consideration.

"THE COURT: All right, and then he could say also, 'You also know that we're not going to pay any bills until we know that the work has been done,' because that's what he said that he did say. They said that he had a conversation to that effect.

"[COUNSEL FOR DEFENDANT]: Well, now we're getting over into the question of whether the agreement was made, but that's not the question before the Court.

"* * * * *

"THE COURT: Well, I'm asking the question in order to try to answer that latter question, but in order to answer it, let's hypothesize that the borrowers go into a bank and talk to the bank officer and find there's a Three Hundred and Eighty-three Dollar charge and they say, 'What do we get for that? You're charging us that and I assume we get something in return for it.' It would seem to me it would be natural and reasonable that the bank officer would say, 'Yes, here's one of the real protections you have. We'll see that the work is being done and we'll see that the expenses have been incurred before we pay the bills.' "

We concur with the trial court's characterization of what would have been natural under the circumstances, particularly since the judge was in a position to assess the credibility of the witnesses. 3 Corbin, Contracts, § 584 at 480.

Consideration of the factors set forth in *Hatley v. Stafford, supra,* 284 Or at 533-35, supports the ruling of the trial court in denying the motion to strike. The several written documents are not complete on their face, for the obligations of the bank in managing the loan fund are nowhere set out. Plaintiffs were not experienced in real estate transactions; no attorney represented either party. The parties were also of unequal bargaining strength; it was unrebutted that plaintiffs had no choice but to pay the construction loan fee to defendant bank in order to obtain construction financing. In *Hatley,* the Supreme Court noted that a contract that is not in fact negotiated may well omit important terms. 284 Or at 534.

Finally, plaintiffs established that the internal policy of defendant was to make disbursements commensurate with the degree of completion of construction. To interpret the written documents to allow defendant absolute discretion in its disbursements is not only contrary to

that policy but leads to the unreasonable result that plaintiffs obtained no substantial services or protection for the one percent construction loan fee. These circumstances tend to establish that the parties did not intend the writings to be their complete agreement. We conclude that the trial court did not err in admitting evidence of the oral agreement.

■     In the second assignment of error, defendant challenges the causal relationship between defendant's breach and plaintiffs' damages, on the ground that plaintiffs themselves caused the loss of the house by missing the first payment due on the promissory note prior to the final disbursement, thereby putting themselves in default on the note and causing foreclosure. Defendant is essentially arguing that its conduct was not the "cause-in-fact" of plaintiffs' damages.[5]

In *Cont. Plants v. Measured Mkt.,* 274 Or 621, 624-25, 547 P2d 1368 (1976), the court held that cause-in-fact of damages need only be proved with "reasonable certainty," that is, to a *probable* degree. Plaintiff here introduced evidence from bank employees that bank policy was to disburse construction loan funds commensurate with the degree of completion of construction in order to protect both the bank and the borrower and that the bank loan officer would not have made the final disbursement had he known the property was only about two thirds completed. Plaintiffs testified that because the building was not completed, they were unable to use it as their home and so could not afford to pay more to complete the house and also repay the loan. In other words, they assert that had the building been completed, foreclosure would not have occurred. There was sufficient evidence for the jury to conclude that premature disbursement of the loan funds[6] was the probable cause of the failure to complete of the building and the consequent

---

[5] The test for compensable damages is one of reasonable foreseeability. *Cont. Plants v. Measured Mkt.,* 274 Or 621, 625-26, 547 P2d 1368 (1976). The evidence described in the text is sufficient to allow the jury here to have concluded, as it did, that loss of the value of the house was a reasonably foreseeable consequence of the failure properly to manage the loan fund.

[6] We note that the claimed duty to obtain a guarantee is not a necessary element of plaintiffs' case; that is, plaintiffs can prevail in the action for breach of the other obligation included in the oral agreement.

foreclosure of the loan, the events which resulted in pecuniary loss to plaintiffs.[7] The trial court did not err in denying defendant's motion for directed verdict.

■ On cross-appeal, plaintiffs argue that as the prevailing parties below they were entitled to an award of attorney fees because one of the loan documents contains language providing for attorney fees in any "collection action." The short answer is that this action at law is neither a collection action on the note nor a foreclosure of the trust deed. *See, e.g., West Portland Develop. Co. v. Ward Cook,* 246 Or 67, 72-73, 424 P2d 212 (1967). The trial court did not err in denying plaintiffs' petition for attorney fees.

Affirmed.

---

[7] There was sufficient evidence before the jury to find that the construction contract was not made purely on a cost-plus basis but was for a maximum sum. There being no suggestion that any of the disbursements was fraudulent, in a strictly cost-plus arrangement the final disbursement could not have been premature, since costs alone would determine the total purchase price. Hence, the bank's action could not have caused the building not to be completed. However, while the earnest money agreement suggests both types of contract, there was also evidence from the bank that it never approved cost-plus contracts because its security could be jeopardized. More significantly, one of the plaintiffs testified that the cost-plus language was intended to be limited by the reference to the price of $36,500, which was meant to set a maximum figure, and that mention of the percentage figure was to ensure that the builder's profit would be directly proportional to costs incurred by him but would not reflect the cost of materials furnished by plaintiffs.

Were this *de novo* review, we might conclude otherwise, but the jury's verdict is only consistent with a finding that this was a construction contract not to exceed a certain amount. The point was presented to the jury in a Summary of Issues for Jury Resolution. Defendant requested neither a jury instruction nor special interrogatory on the point, and it does not make any claim of error that there was insufficient evidence to support the implied finding.