Argued and submitted December 14, 1988, affirmed June 28, reconsideration denied August 25, petition for review denied October 26, 1989 (308 Or 465)

O'MEARA,
*Appellant,*

*v.*

PRITCHETT et al,
*Defendants,*

*and*

UNITED STATES NATIONAL BANK OF OREGON,
*Respondent.*

(85-0552C; CA A48471)

776 P2d 866

John M. Berman, Beaverton, argued the cause and filed the briefs for appellant.

James N. Westwood, Portland, argued the cause and filed the brief for respondent. With him on the brief were Jeffrey J. Druckman and Miller, Nash, Wiener, Hager & Carlsen, Portland.

Before Joseph, Chief Judge, and Warren and Rossman, Judges.

JOSEPH, C. J.

Warren, J., specially concurring.

## JOSEPH, C. J.

Plaintiff appeals a judgment granting defendant United States National Bank's (USNB) motion for a directed verdict. We affirm.

The parties do not dispute what happened. Plaintiff and Pritchett[1] entered into an agreement to import and market satellite antennas from Mexico. Two corporations were also involved: ISM would import and ISS would market the antennas. Plaintiff and Pritchett agreed that plaintiff would pledge $30,000 cash as collateral to secure a letter of credit to be issued by USNB to ISM for payment for the initial shipment of antennas. On September 13, 1984, they went to a USNB branch to obtain the letter of credit and to execute the collateral agreement. Before executing any documents, they told USNB's representative that, among other things, the letter of credit should provide for shipment of the goods by October 31, 1984, and that USNB should receive conforming shipping documents no later than November 15, 1984. Those events and dates were stated in the letter of credit.

Plaintiff and Pritchett also told the representative that plaintiff would pledge $30,000 against the event that ISM would default on its obligations under the letter of credit. They discussed what would happen to plaintiff's $30,000 if the shipping documents were not presented by November 15. The representative said that, in that event, plaintiff "would keep his $30,000." The representative also said that the collateral agreement and the letter of credit together would provide that plaintiff's obligation in the transaction would end on November 15.

Pritchett, as president of ISM, signed the application for the letter of credit. Plaintiff then signed the collateral agreement on USNB's form, which provides that plaintiff grants USNB a security interest in the collateral to secure "the indebtedness," defined as

"all obligations, debts and liabilities of [ISM] * * * to [USNB] or any claim by [USNB] against [ISM] * * * heretofore, now or hereafter made, incurred, or created * * *."

---

[1] Pritchett, Robert Noble, International Satellite Manufacturers, Inc. (ISM), and International Satellite Sales, Inc. (ISS), were also defendants. This appeal concerns only the claim against USNB.

It also provides that USNB "may grant an extension of time to or renew any obligation of [ISM] * * * or exchange or release any collateral or other security without first obtaining the consent of the undersigned." Plaintiff assigned a $30,000 certificate of deposit to USNB as the collateral. The collateral agreement did not contain the termination date that plaintiff and Pritchett had discussed with USNB's representative or any termination date. It contains no express reference to the underlying antenna purchase transaction or the letter of credit.[2]

The goods were not shipped by October 31, and the shipping documents were not presented by November 15. ISM and USNB extended the letter of credit to December 15, 1984, without plaintiff's knowledge or consent. In January, 1985, plaintiff discovered that Pritchett was attempting to accept late delivery of the goods. When plaintiff asked USNB to release his funds, he learned that ISM had already accepted late delivery and presentation of the shipping documents, had waived discrepancies in the documents and had authorized USNB to pay the seller on the letter of credit. In the meanwhile, plaintiff's certificate of deposit had been automatically renewed. When it again matured and ISM had not paid its debt to USNB, the bank collected the $30,000 deposit, plus interest, for its own account.

Plaintiff brought this action to recover $30,000. At trial, he introduced evidence of the conversations with USNB's representative and the purported agreement to return his $30,000 after November 15.[3] At the close of plaintiff's case, the court struck the evidence of the conversations on the ground that the collateral agreement was a fully integrated contract and that parol evidence could not be permitted to vary or contradict its terms and directed a verdict for USNB.

---

[2] The parties do not raise the question whether the letter of credit (including the application) and the collateral agreement constitute, together, a single written agreement. They treat the collateral agreement as the only written agreement in issue, and so do we.

[3] USNB points out in its brief that the oral termination agreement was not pleaded by plaintiff and was raised only at the beginning of trial. It suggests that that procedural point is an alternative ground to sustain the trial court. *See Booras v. Uyeda*, 295 Or 181, 189, 666 P2d 791 (1983). Because plaintiff's case was tried entirely on the late raised theory and was terminated by a directed verdict based on it, we believe it best to decide it on that theory.

Plaintiff contends that the collateral agreement does not contain all of the terms of the parties' agreement, because it does not state when plaintiff's obligation would end and when USNB would give him back the collateral. He argues that the stricken testimony about USNB's oral agreements concerning those terms was proper and prevented a directed verdict.

ORS 41.740, the Parol Evidence Rule, provides, in pertinent part:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except where a mistake or imperfection of the writing is put in issue by the pleadings or where the validity of the agreement is the fact in dispute. However this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in ORS 42.220, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud. The term 'agreement' includes deeds and wills as well as contracts between parties."

**1-4.** The only certainties about the meaning of the statute are that it is a substantive rule of law and that it does not mean all that its words would be taken to mean in ordinary usage. Whether it bars admission of an oral agreement made before and extrinsic to a written agreement depends on whether the parties intended that the writing be a complete and full integration of their agreement. *Hatley v. Stafford,* 284 Or 523, 532, 588 P2d 603 (1978). Determination of that question is a matter for the court, unless the parties have declared their intention in the agreement. Under Oregon's peculiar application of *Restatement of Contracts,* § 240,[4] even when there is a written agreement that is "integrated," the court

---

[4] Section 240 provides, in relevant part:

"(1) An oral agreement is not superseded or invalidated by a subsequent or contemporaneous integration, nor a written agreement by a subsequent integration relating to the same subject-matter, if the agreement is not inconsistent with the integrated contract, and

"(a) is made for separate consideration, or

"(b) is such an agreement as might naturally be made as a separate agreement by parties situated as were the parties to the written contract."

may admit evidence of a prior oral agreement if the oral terms are "not inconsistent" with the written terms *and* (1) if the oral agreement was made for a separate consideration *or* (2) if the oral agreement is, in the light of the circumstances, such as might "naturally" be made as a *separate* agreement by the parties. *Hatley v. Stafford, supra,* 284 Or at 533; *see also Caldwell et ux v. Wells,* 228 Or 389, 395, 365 P2d 505 (1961). The oral agreement is deemed to be consistent with the later written one, unless it contradicts an *express* provision in the writing. *Hatley v. Stafford, supra,* 284 Or at 533.

The foregoing paragraph, which is in substance the same as appears in *Greenwade v. Citizens Bank of Oregon,* 50 Or App 395, 399, 624 P2d 610 (1981), tends to make Parol Evidence Rule law seem a good deal clearer than it is now or ever has been in Oregon. *Hatley v. Stafford, supra,* begins with a statement identifying two of the confusing lines of authority, 284 Or at 533, and sets as its goal clarification of the confusion. Unfortunately, the case only achieves that goal if it is read carelessly. When it is read carefully, it is not particularly clear and is by no means as helpful as the frequency of its citation (*see* cases cited in note 7, *infra*) would suggest.

5.      It is not fair to cast aspersions only on *Hatley. Caldwell et ux v. Wells, supra,* the case on which much of *Hatley* rests, apparently accepts § 240 as some sort of paraphrase of the common law Parol Evidence Rule. *Hatley* picks up that idea and amplifies it. To the extent that this court's opinions have perpetuated confusion about the meaning and use of § 240,[5] our only excuse is that we are bound to follow Supreme Court decisions (unless, presumably, they lead over a precipice). Section 240 is in the original *Restatement of Contracts,* promulgated in 1932. *Restatement (Second) Contracts* was promulgated in 1979. Sections 209-218 of the new *Restatement* replace §§ 237-244 of the original *Restatement.* Many of the differences between the two sets of rules are merely linguistic, but the later compilers have also made a noble effort at clarification. It is not necessary in this opinion to analyze all of the

---

[5] We have even said that § 240 *is* the Oregon Parol Evidence Rule. *First National Bank v. Sybil,* 74 Or App 329, 332, 702 P2d 1141, *rev den* 300 Or 180 (1985).

changes. It is noteworthy, however, that § 216,[6] which is the substitute for § 240, makes it clear that what it is intended to provide is *one* guide to determining *whether* an agreement is integrated. The new *Restatement* also makes it clear that, once the substantive Parol Evidence Rule has been stated, in § 213, there are evidential consequences. Those consequences are stated in §§ 214, 215 and 216.

Despite its hard to follow meandering, the holding in *Hatley v. Stafford, supra,* as applied here, leads to the conclusion that, if the collateral agreement is a complete integration, the trial court was correct in striking plaintiff's evidence. What none of the cases[7] comes to grips with is how we review a trial court's determination that an agreement is or is not integrated. The trial court found the collateral agreement to be integrated and held that plaintiff's evidence related to an agreement that would conflict with USNB's express rights under the agreement that are stated in the language quoted above. Because *Hatley v. Stafford, supra,* says that the Parol Evidence Rule applies *only* to completely integrated agreements and because, as a consequence of that, not even evidence of a consistent term could be admitted if the agreement is completely integrated, integration is the critical issue for our review. If the trial court was correct as to the extent of the integration, § 240 and testing the oral agreement for consistency or inconsistency have nothing to do with the case.

---

[6] *Restatement (Second) Contracts,* § 216, provides:

"(1) Evidence of a consistent additional term is admissible to supplement an integrated agreement unless the court finds that the agreement was completely integrated.

"(2) An agreement is not completely integrated if the writing omits a consistent additional agreed term which is

"(a) agreed to for separate consideration, or

"(b) such a term as in the circumstances might naturally be omitted from the writing."

[7] Although it is by no means all inclusive, this list (in chronological order) exemplifies the range of decisions (good and bad) purporting to decide Parol Evidence Rule and § 240 issues: *Caldwell et ux v. Wells, supra; Deering v. Alexander,* 281 Or 607, 576 P2d 8 (1978); *Hatley v. Stafford, supra; Stone-Fox, Inc. v. Vandehey Development Co.,* 46 Or App 465, 611 P2d 1195 (1980), *rev'd and rem'd* 290 Or 779, 626 P2d 1365 (1981); *Percival v. Corey,* 48 Or App 511, 617 P2d 310 (1980), *rev den* 290 Or 302 (1981); *Oakridge Cablevision v. First Interstate Bank,* 65 Or App 640, 673 P2d 532 (1983); *Deerfield Commodities v. Nerco, Inc.,* 72 Or App 305, 696 P2d 1096, *rev den* 299 Or 314 (1985); *First National Bank v. Sybil, supra* n 4; *Domingo v. Copeland Lumber Yards,* 81 Or App 52, 724 P2d 841 (1986); *Howell v. Oregonian Publishing Co.,* 82 Or App 241, 728 P2d 106 (1986).

**6, 7.** Given that the law commits the determination of the parties' intent with respect to integration to the trial judge as a *factual* determination and that there is no foundation whatsoever for us to have the authority to make a *de novo* redetermination of that matter, the only way that we can review the trial court's decision is by determining if the factual conclusion is supported by evidence. The trial court had before it the written agreement and the only testimony that plaintiff presumably could introduce about the circumstances leading up to the execution of that agreement. The court concluded that the parties intended that the writing be a full integration of their agreement. We cannot say that the evidence did not support that conclusion. Therefore, the trial court was correct in concluding that the agreement was fully integrated and in striking plaintiff's evidence.

Affirmed.

**WARREN, J.,** specially concurring.

I agree with the result in this case. I disagree, however, with the majority's statement that the question whether a writing is integrated is decided as a factual matter by the trial judge and that we cannot review that decision except to decide whether it is supported by substantial evidence.

Whether a writing is integrated is a legal conclusion. As such, a ruling on whether an agreement is integrated is reviewable on appeal as a question of law.

The question in this case is whether the oral agreement about when the collateral agreement would terminate is inconsistent with the written agreement. If it is not, it must be decided whether there is separate consideration for the oral agreement or whether, in the light of the circumstances, the oral agreement is one which the parties might naturally agree upon separately.

The fact that the agreement had no termination date is not necessarily inconsistent with the existence of a termination date. Evidence of a termination date does not contradict an *express* contractual term in this case. However, it is clear that, if the parties had intended the collateral agreement to be other than open-ended as to duration, a term limiting its length would naturally be included in the writing. As such, it

would not "naturally" be agreed upon separately from the written agreement.

There was no evidence that there was separate consideration for the oral agreement.