Argued and submitted March 19, affirmed October 10, 1990, reconsideration denied March 13, petition for review denied April 2, 1991

CARLTON CREDITORS
ASSOCIATION, INC.,
*Appellant,*

*v.*

WILLAMETTE PRODUCTION
CREDIT ASSOCIATION
IN LIQUIDATION,
Federal Intermediate Credit Bank of Spokane,
Brent Ciurlino, Hugh Miller and Larry Butterfield,
*Defendants,*

*and*

Gordon BAILEY
dba Carlton Plants,
*Respondent.* ·

(85-1351; CA A50997)

798 P2d 700

Clayton C. Patrick, Salem, argued the cause for appellant. With him on the briefs was William D. Brandt, Salem.

Thomas W. McPherson, Portland, argued the cause for respondent. With him on the brief was Rankin, VavRosky, Doherty, MacColl & Mersereau, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Plaintiff, Carlton Creditors Association, Inc., is a corporation formed solely to act as the assignee of the rights of unsecured creditors and stockholders of Carlton Nursery, Inc. (Carlton). It brought this action against Bailey (defendant), alleging the breach of an oral contract by which Bailey agreed to pay the unsecured creditors and stockholders of Carlton about $65,000 apiece a year for three years incident to his purchase of the assets of Carlton from Willamette Production Credit Association (WPCA). Although claims were asserted against other defendants, only the claim against Bailey was submitted to the jury.

At the close of the evidence, defendant moved for a directed verdict, which was denied. After the jury returned a verdict for plaintiff, the trial court granted defendant's motion for judgment notwithstanding the verdict. Plaintiff appeals from that judgment. Because we agree that evidence of the alleged oral contract was not admissible under the Parol Evidence Rule, ORS 41.740, there was no admissible evidence to support the verdict; accordingly, we affirm.

Carlton had borrowed from WPCA more operating and expansion funds than it was able to repay. By 1983, the company was unable to pay the interest on the $14 million debt then outstanding. The debt was secured by all of Carlton's real and personal property and by the personal guarantees of Carlton's shareholders and their spouses. In February, 1984, WPCA demanded payment and required Carlton to liquidate assets. Carlton did sell some assets but, as of October, 1984, there remained unpaid a debt of approximately $7 million. After attempting unsuccessfully to sell the business, and considering other alternatives, Carlton eventually decided to surrender its assets voluntarily to WPCA in full satisfaction of the debt, as described below.

On October 6, 1984, Brooks, president of Carlton, and Bailey met to discuss the possibility of Bailey's buying the business. It was during that meeting that plaintiff contends that Bailey made the promises on which plaintiff relies in this action. It is agreed, however, that no purchase price for the business was ever discussed, except that Brooks advised Bailey of two offers that had been received, one for $3.6 million and the other for $3.8 million.

On October 8, Carlton's attorney began negotiations with Bailey's attorney and the attorney for WPCA. The details and the structure of the transaction were agreed upon. First, Bailey signed an earnest money agreement on October 9, agreeing to buy from WPCA, as seller, all of Carlton's assets for $3.85 million, if the seller could obtain title to those assets. Carlton "acknowledged" the agreement by signing it. On October 18, WPCA made a written demand on Carlton for possession of all of its security. On October 25, Carlton complied by executing a document entitled "Peaceful Surrender and Waiver," by which it transferred all of its assets to WPCA and waived its rights under ORS 79.5040 and ORS 79.5050. The document also provided:

"Carlton * * *

"* * * * *

"(10)   Agrees that a sale by WPCA and the Federal Land Bank of Spokane of all the real and personal property held by both of them together for $3,850,000.00 would be a commercially reasonable sale and that no better price could have been obtained by a sale at a different time or method than that now contemplated by them to Gordon Bailey. There is no recognized market for goods of this quantity; a public sale would net substantially less than this sale; and the officers and directors and stockholders of Carlton concur in this sale as the one most likely to pay the most dollars on the corporation's debts to WPCA and the Federal Land Bank of Spokane."

On the same date, Carlton, its stockholders and WPCA executed an agreement setting forth WPCA's agreement releasing the guarantors on the debt, as well as other incidental agreements of the parties to effectuate the transaction. The assets were then transferred by WPCA to Bailey on that date. None of the documents mentions the alleged agreement on which plaintiff relies.

ORS 41.740, the Parol Evidence Rule,[1] provides, in

---

[1] *See Restatement (Second) Contracts* § 216 (1979). *Restatement* § 240 is the same as the Oregon Parol Evidence Rule, *First National Bank v. Sybil,* 74 Or App 329, 332, 702 P2d 1141, *rev den* 300 Or 180 (1985), and section 216 is used to determine whether an agreement is integrated. *See O'Meara v. Pritchett,* 97 Or App 329, 776 P2d 866, *rev den* 308 Or 465 (1989). That section states:

"(1) Evidence of a consistent additional term is admissible to supplement an integrated agreement unless the court finds that the agreement was completely

pertinent part:

> "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except where a mistake or imperfection of the writing is put in issue by the pleadings or where the validity of the agreement is the fact in dispute."

The statute bars admission of evidence of the October 6, 1984, oral agreement if the parties intended the writing (or writings) to be a complete integration of their agreement. *Hatley v. Stafford,* 284 Or 523, 532, 588 P2d 603 (1978). An agreement, generally, will be considered integrated if the parties adopt a writing as the final and complete expression of the agreement. *Restatement of Contracts* § 228 (1932). Unless the parties have declared their intention in the agreement, determination of whether the contract was intended to be integrated is a fact question for the trial court. If the trial court's determination is supported by evidence, we may not disturb it. *O'Meara v. Pritchett, supra* n 1.

■ Plaintiff contends that there is no integrated agreement to which Carlton was a party. That is only superficially true. The entire transaction was a single, integrated one in which all of the parties were represented by counsel and which was intended to avoid a foreclosure and to release Carlton's shareholders and their spouses from personal liability under their guarantees. The manner in which the transaction was structured was intended to insulate Bailey from claims of unsecured creditors. Accordingly, Carlton's assets were to be transferred to WPCA in full satisfaction of Carlton's debt and then transferred to Bailey by WPCA. Although there is no single document setting forth the entire transaction, it is clear

---

integrated.

"(2) An agreement is not completely integrated if the writing omits a consistent additional agreed term which is

"(a) agreed to for separate consideration, or

"(b) such a term as in the circumstances might naturally be omitted from the writing."

For a detailed discussion, *see O'Meara v. Pritchett, supra,* 97 Or App at 334.

from the separate documents that they are part of the same contract that was consummated.

Although the initial document, the earnest money agreement, technically was between WPCA and Bailey, Carlton had to agree that the purchase price was "commercially reasonable" and that no better price could have been obtained by WPCA if it were to sell the property by public sale, because Carlton was required to make that representation to WPCA in exchange for its satisfaction of the debt. Carlton made that representation in the "Peaceful Surrender and Waiver" agreement. Apparently for that reason, Carlton signed the earnest money agreement under the word "Acknowledged," thereby agreeing, at the outset, that the purchase price was to be $3.85 million and was the best that could be obtained.

By signing that agreement, Carlton also acknowledged that WPCA was required to hold Bailey harmless against claims of any third party asserting any right to compensation from him arising out of the transaction. That provision was carried over to the bill of sale of the personal property.[2]

The fact that the transaction was effectuated by more than one writing does not preclude a finding that, taken together, the writings constituted part of the same contract, if that is what the parties intended. *O'Meara v. Pritchett, supra.* The trial court so found, and the evidence supports that finding. *O'Meara v. Pritchett, supra.* If Bailey was to pay more than $3.85 million for Carlton's assets, with the excess going to others than WPCA, it would have been natural, if not mandatory to prevent a fraud on WPCA, for the parties to have so provided in the earnest money agreement or, if not there, in the "Peaceful Surrender and Waiver" agreement in order to avoid making Carlton's representations to WPCA false.

Affirmed.[3]

---

[2] WPCA's liability in the bill of sale was limited to $800,000 for claims made within two years after the date of sale.

[3] Given our disposition of the case on the Parol Evidence Rule issue, we need not decide the other issues presented.