Argued and submitted June 5, 1992, affirmed May 19, reconsideration denied
August 18, petition for review pending 1993

WESCOLD, INC.,
formerly known as Western Engineers, Inc.,
*Respondent,*

*v.*

LOGAN INTERNATIONAL, LTD.,
*Appellant.*

(A8911-06866; CA A68883)

852 P2d 960

W. Eugene Hallman, Pendleton, argued the cause for appellant. With him on the briefs was Mautz Hallman Baum & Hostetter, Pendleton.

Daniel M. Ricks, Portland, argued the cause for respondent. With him on the brief was Kennedy, King & Zimmer, Portland.

Before Rossman, Presiding Judge, and De Muniz and Leeson,* Judges.

LEESON, J.

---

* Leeson, J., *vice* Joseph, C. J., retired.

## LEESON, J.

Defendant appeals from a judgment for payment due on a contract for the sale of goods. It assigns error to the trial court for (1) striking its defense and counterclaim for breach of implied warranty of fitness for a particular purpose; (2) instructing the jury that, as a matter of law, three particular documents constituted a fully integrated contract; and (3) not allowing one of its witnesses to testify about his understanding of one of the terms of the agreement. We affirm.

Defendant is in the business of producing frozen french fries. After potatoes are washed, peeled, cut, dried, and fried, they are frozen and packaged. The freezing process includes placing fries in a "freeze tunnel" on a perforated conveyor belt. Fans force air to circulate through freezer coils, then the cold air passes through the perforations in the conveyor and freezes the fries. The air heated by that process returns to the freezer coils to complete the cycle.

Sometime in 1988, defendant's general manager, Eatinger, contacted plaintiff's sales representative, Ristau, to determine whether defendant's freeze tunnel could be upgraded to freeze 10,000 pounds of fries per hour, even during summer. On November 1, 1988, Ristau transmitted to Eatinger a facsimile (fax) of a one-page letter in which he recommended adding three banks of freezer coils to the system for a certain price and specified payment terms. The proposal excluded "wiring, insulation, added valves for the existing coils, or any service work on the existing system." The letter had been typed on plaintiff's stationery. Preprinted at the bottom were the words, "Warranty, Terms and Conditions Shown on Reverse Side." Ristau did not send a fax of the reverse side.

Eatinger and Ristau discussed the proposal on the telephone on November 2. Eatinger asked Ristau to provide something in writing to say that adding the coils would enable defendant to freeze 10,000 pounds of fries per hour. Later that day, Ristau transmitted to Eatinger a fax of a handwritten letter explaining what he expected the new coils to accomplish. It said:

"Assuming these coils are added and based on the book rating of your existing compressor system, I believe this

addition would allow you to consistently run at the 10,000 #/hr level without excessive defrosting. I qualify this by saying that I have no knowledge of the current compressor maintenance condition and no knowledge of excessive outside air leaks into the freezer tunnel if they exist. * * * In working up this proposal a further assumption on my part was that your operating problem is due to coil frosting and subsequent loss of coil capacity, not excessive frost build-up that cuts off air flow to the coils and product.

"This may sound somewhat vague. However, for the money involved, I believe this quoted arrangement will provide you with the best approach to achieving a consistent 10,000 #/hr production rate. If you need anything more concrete than this, we would need to have our chief engineer from Seattle visit the jobsite."

The handwritten version was on plain paper but, later that day, the letter was typed on plaintiff's stationery — complete with the warranty, terms and conditions printed on the back — and mailed. At the bottom of the back page, in bold letters, was a disclaimer that expressly excluded any implied warranties of merchantability and fitness for a particular purpose. Eatinger received the typed version and placed it in his files. He testified that he did not read it.

Defendant originally hoped to upgrade its freeze tunnel during the holiday shutdown between Christmas and New Year's Day, but was unable to obtain financing. Nevertheless, discussions continued. On April 21, 1989, at defendant's request, plaintiff sent another letter to "requote" a price for adding 2200 linear feet of coil to defendant's freeze tunnel and to quote the per unit price for valves that defendant had asked about. That letter was printed on plaintiff's new stationery, which was blank on the back and disclosed nothing about additional terms. Defendant, through Eatinger, agreed to the proposal by telephone on May 1, and ordered three of the valves. On the same day, defendant's vice-president prepared a check for $17,000 as a down payment on its purchases of approximately $68,000. On May 2, plaintiff sent a letter to confirm the agreement. The letter included the same terms that the April 21 letter contained, added the price for three valves, and incorporated by reference an attachment that contained the same terms that had been printed on the back of the November 2 letter. At the end

of the letter was a line for defendant's signature, but defendant did not sign it. Plaintiff also sent an invoice, the front of which again referred to the reverse side containing those terms. Eatinger testified that he did not receive those writings before the down payment check was mailed and that he never read the "warranties, terms and conditions."

After installation of the new coils, defendant's freeze tunnel still did not reliably freeze 10,000 pounds of fries per hour.[1] Defendant refused to pay any more on the contract.

Plaintiff brought this action to collect the balance due or, in the alternative, to recover in *quantum meruit*. Defendant raised several defenses and counterclaims. Plaintiff moved to strike the defense and counterclaim for breach of implied warranty of fitness for a particular purpose, because both were precluded by the disclaimer that appeared in bold type on the backs of the November 2 and May 2 letters. Defendant filed a motion *in limine*, asking the court to exclude evidence of all the terms on the backs of those letters, because the April 21 letter was a fully integrated contract and, therefore, any evidence of prior agreements was inadmissible under the parol evidence rule. The court concluded that those terms were part of the contract, and that the parties' fully integrated contract consisted of the three letters that plaintiff sent to defendant on November 1 and 2 and April 21. Therefore, it granted plaintiff's motion to strike. The case went to trial, and the judge instructed the jury that the terms of the three letters were the parties' entire contract. The jury found for plaintiff on its contract claim and against defendant on all of its counterclaims.

■ Defendant first argues that the court erred by concluding that the three letters were a fully integrated contract, because neither party presented that theory. It argues that plaintiff's trial memorandum alleged only that the May 2 letter was the parties' integrated contract.[2] Plaintiff's trial memorandum, however, did not contain all of plaintiff's arguments. At the pretrial hearing, plaintiff also argued that,

---

[1] Defendant later replaced several old fans, and then production increased to the desired level.

[2] Plaintiff did not argue that theory on appeal as an alternative basis to affirm the judgment.

even if the contract was formed on May 1, the "November 2, 1988 letter, in its entirety, [was] part of the contract." Defendant cites no authority, and we find none, that the trial court was bound to decide the issue of integration on a theory advocated by the parties. All of the documents the court concluded were part of the contract were offered as such by one party or the other during the pretrial hearing. There was no error.

■ Defendant next argues that the April 21 letter, which contained no terms on the back, was a complete and exclusive expression of the agreement—that is, a "fully integrated contract"—and that the trial court should have held the November letters inadmissible under ORS 72.2020,[3] because they were evidence of a prior agreement on the same subject.

Both parties struggled with our standard of review of the trial court's resolution of the integration issue. Plaintiff argues that the court's pretrial ruling that the parties did not intend to fully integrate their agreement in the April 21 letter was a factual finding, which we review to determine whether there is any evidence to support it. *O'Meara v. Pritchett*, 97 Or App 329, 776 P2d 866, *rev den* 308 Or 465 (1989); *see also Illingworth v. Bushong*, 297 Or 675, 694, 688 P2d 379 (1984); *Rosalez v. Unigard Insurance Co.*, 283 Or 63, 67, 581 P2d 945 (1978). In this case, there is no dispute about the underlying historical facts. Therefore, defendant argues that the trial court was called upon only to decide how a provision of the Uniform Commercial Code applies to the facts, which we review as a matter of law. *Can-Key v. Industrial Leasing*, 286 Or 173, 593 P2d 1125 (1979).

■ The opinions reviewing integration issues have not always clearly identified whether the matter under review

---

[3] ORS 72.2020 provides:

"Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:

"(1) By course of dealing or usage of trade as provided in ORS 71.2050 or by course of performance as provided in ORS 72.2080; and

"(2) By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

turned on the trial court's resolution of disputes about historical facts or its conclusions about the legal effects of historical facts. However, the cases have unanimously held that whether the parties had an integrated contract and, if so, what documents it includes, are questions for the court. *See, e.g., Hatley v. Stafford*, 284 Or 523, 532, 588 P2d 603 (1978), and citing cases. Nevertheless, *O'Meara v. Pritchett, supra*, said:

> "Given that the law commits the determination of the parties' intent with respect to integration to the trial judge as a *factual* determination and that there is no foundation whatsoever for us to have the authority to make a *de novo* redetermination of that matter, the only way that we can review the trial court's decision is by determining if the factual conclusion is supported by evidence." 97 Or App at 336. (Emphasis in original.)

Notably, *O'Meara* did not cite any authority for its conclusion that we review the issue exactly as we review findings of historical fact. Similarly, the specially concurring opinion in *O'Meara* cited no authority for its conclusion that

> "[w]hether a writing is integrated is a legal conclusion. As such, a ruling on whether an agreement is integrated is reviewable on appeal as a question of law." 97 Or App at 336.

Two subsequent cases have relied on *O'Meara* for the standard of review to be applied to a trial court's decisions about the integration of contracts. *Leitz v. Thorson*, 113 Or App 557, 833 P2d 343, *rev den* 314 Or 573 (1992); *Carlton Creditors v. Willamette Production Credit*, 103 Or App 569, 798 P2d 700 (1990), *rev den* 311 Or 261 (1991). Those cases fail to acknowledge that there are reasons why the integration issue is a matter for the court.

Treating the integration issue exactly as we would treat any ordinary finding of fact does violence to the purpose of the parol evidence rule. *See Hatley v. Stafford, supra*, 284 Or at 532. The parol evidence rule, ORS 41.740, and its counterpart in the Uniform Commercial Code, ORS 72.2020, like the statute of frauds, ORS 41.580, are "substantive rules of contract law that promote commercial certainty by allowing contracting parties to rely on the ultimate written expression of their agreement as embodying the terms of their agreement." *Onita Pacific Corp. v. Trustees of Bronson*, 315

Or 149, 162, 843 P2d 890 (1992). The parol evidence rule is said to be "the expression of a policy to limit the powers of the finder of fact to make certain determinations of substantive law." 3 Corbin, *Contracts* 1992 Supp at 658, § 595 (1960). The principal purpose of the rule is to give preference to the written version of terms, because "[w]ritings are more reliable than memories to show contract terms, and forgery is supposedly easier to detect than is lying on the witness stand." White & Summers, *Uniform Commercial Code* 66, § 2-9 (1972). Thus, the question of whether a contract is integrated in a writing is one for the court, " 'for it relates to the admission or rejection of evidence.' " *Hatley v. Stafford, supra,* 284 Or at 532 (quoting McCormick, *Handbook of the Law of Evidence* 437, § 215 (1954)).

When appellate courts reverse a trial court's ruling on an integration issue, "the real point of the reversal usually is that the trial judge failed to do his job, which is to listen to, and screen out good parol evidence from the untrustworthy." 3 Corbin, *Contracts* 1992 Supp at 658, § 595 (1960). Older cases, therefore, referred to the decision as a "question of law," even though the ruling was based on the court's interpretation of facts. 3 Corbin, *Contracts* 1992 Supp at 662, § 595 (1960). Although the issue of integration is not, strictly speaking, a question of law, neither is it purely a question of fact. In other contexts, we review conclusions derived from applying law to facts as we would questions of law. *See, e.g., Wells v. Carlson,* 78 Or App 536, 717 P2d 640 (1986); *Cobra Building & Devel., Inc. v. City of Salem,* 59 Or App 441, 444, 651 P2d 150, *rev den* 294 Or 295 (1982); *see also Nat. Cash Reg. Co. v. I.M.C., Inc.,* 260 Or 504, 508-09, 491 P2d 211 (1971). Neither party in this case offered reasons why the standards of review in parol evidence rule cases should be any different from those applied in any other context, and we see none.

Accordingly, we hold that deciding whether terms of a contract are integrated in a writing involves two steps. First, the court must consider all the relevant circumstances to resolve preliminary issues of historical fact. Simply put, the court must decide what happened. *Blehm v. Ringering,* 260 Or 46, 50, 488 P2d 798 (1971); *Siegner v. Interstate Production Credit Assn.,* 109 Or App 417, 424, 820 P2d 20 (1991);

*Carlton Creditors v. Willamette Production Credit, supra,* 103 Or App at 573-74. We review those findings for any evidence to support them. *Illingworth v. Bushong, supra,* 297 Or at 694. Second, the court determines the legal effects of those facts. We review that determination as a legal conclusion. *Wells v. Carlson, supra; Cobra Building & Devel., Inc. v. City of Salem, supra,* 59 Or App at 444; *see also Nat. Cash Reg. Co. v. I.M.C., Inc., supra.* To the extent that *O'Meara v. Pritchett, supra,* held otherwise, that case and those that relied on it are overruled.

■ When presented with documents offered as evidence of a contract, the court may conclude that (1) the writings (or some of them) constitute the parties' fully integrated contract, *Hatley v. Stafford, supra,* 284 Or at 532; ORS 41.740; or (2) the writings (or some of them) contain the integrated terms of a partially integrated contract, *Restatement (Second) Contracts,* § 216; *see also Caldwell et ux v. Wells,* 228 Or 389, 395, 365 P2d 505 (1961); or (3) no terms of the parties' contract are integrated in the writings, and the writings are only evidence of the terms. *Nat. Cash Reg. Co. v. I.M.C., Inc., supra; Blehm v. Ringering, supra,* 260 Or at 50.

■ Although whether terms are integrated in a writing depends on what the parties intended, the court's task is not to decide what the parties *subjectively* intended. *See generally Kabil Developments Corp. v. Mignot,* 279 Or 151, 566 P2d 505 (1977); *Van v. Fox,* 278 Or 439, 445-46, 564 P2d 695 (1977). Instead, the court decides whether the historical facts are susceptible of only one reasonable interpretation. The entire contract is fully integrated if the facts are susceptible of meaning only that a reasonable person in the circumstances would have understood the writing or group of writings to be a complete and exclusive expression of all the terms of their agreement. *Hatley v. Stafford, supra,* 284 Or at 535-36; *Siegner v. Interstate Production Credit Assn., supra,* 109 Or App at 429-30. Only some terms of the contract are integrated if the facts are susceptible of meaning only that a reasonable person in the circumstances would have understood the writing or group of writings to be a complete expression of the parties' agreement as to the terms contained therein, but a reasonable person might not have understood the writing to be an exclusive statement of the entire contract. *See Siegner*

*v. Interstate Production Credit Assn., supra.* If the court concludes that the contract is fully integrated, then the parties may not offer extrinsic evidence of the existence of additional terms not contained in the writing.[4] *Restatement (Second) Contracts*, § 216(1). If the court concludes that the contract is only partially integrated, then the parties may offer extrinsic evidence of additional terms, if the alleged terms are "not inconsistent" with the writing and are of a kind that "might naturally be made" as separate agreements, in the light of the circumstances, or if they are supported by separate consideration. *Hatley v. Stafford, supra,* 284 Or at 533; *Restatement (Second) Contracts*, § 216(2).

Evidence supports the trial court's findings that the parties in this case intended to include a written promise about production goals in their contract. Eatinger testified that he believed that plaintiff had promised that the equipment would enable defendant to freeze 10,000 pounds of fries per hour. He insisted that plaintiff make the promise in writing. He also testified that the language on the front of the November 2 letter constituted that written promise, that he received the letter, and that he placed it in his files. There was no evidence that defendant objected to the letter as inaccurate or unsatisfactory. Plaintiff presented the April 21 letter to defendant as a "requote" of prices for the same proposal that had been made on November 1. However, neither of those letters contained anything about plaintiff's promise about production capacity. The trial court correctly concluded that, because defendant had insisted that the promise be in writing, the parties could not reasonably have thought that the April 21 letter was an exclusive and final expression of all the terms about which they had agreed. Therefore, the court properly denied defendant's motion to exclude the November 2 letter regarding production capacity.

Defendant argues that the trial court nevertheless should not have granted plaintiff's motion to strike the defense and counterclaim for breach of implied warranty of fitness for a particular purpose, because the November 2 letter was not evidence of a course of dealing under ORS

---

[4] Of course, extrinsic evidence would still be admissible to help interpret any ambiguous terms contained in the writing. *See, e.g., Mann v. Wetter*, 100 Or App 184, 785 P2d 1064, *rev den* 309 Or 645 (1990).

71.2050(3). Even if it was, defendant argues, the parties' "course of dealing" could not support the court's conclusion that the disclaimer was an integrated term. Defendant's argument fails because, contrary to its interpretation, the court did not base its decision on evidence of a "course of *dealing*." Rather, the court found that defendant agreed to the disclaimer on the back of the November 2 letter. The evidence the court relied on was defendant's "course of *conduct*, or lack thereof."[5] (Emphasis supplied.) The court explained that, by "course of conduct," it meant that defendant "knew [the disclaimer] was there, and they knew as early as * * * November 1st [sic] and had no objection, never raised it." That finding is supported by evidence,[6] and we will not disturb it. *See* ORS 72.2020; ORS 72.2070. The trial court properly struck the defense and counterclaim, and its jury instruction was correct to the extent that it informed the jurors that the November 2 letter was part of the contract.

Defendant also assigns error to the trial court's conclusion that the letters of November 1 and 2 and April 21 comprised the parties' fully integrated contract. However, the only consequence of its conclusion—as distinct from its conclusions that particular terms had been integrated in the writings—was that it excluded some testimony about the November telephone conversations between the parties and about the meaning of the written promise about anticipated production capacity. In its reply brief, defendant concedes that, even if the court erred by not allowing a witness to testify about those things, that error is not grounds for reversal, because it does not affect a substantial right of a party. We accept that concession.

Affirmed.

---

[5] At the hearing, defendant asked whether the basis for the court's conclusion was "just because [defendant] had knowledge of [the preprinted terms], not because [defendant] affirmatively assented to [them]?" The court replied, "Well, by course of conduct or lack thereof, yes, that's correct."

[6] The finding is not defeated by Eatinger's testimony that, although he received the letter, he did not read it. *Franklin v. Western Pac. Ins. Co.*, 243 Or 448, 452, 414 P2d 343 (1966); *Lawrence v. Peel*, 45 Or App 233, 238, 607 P2d 1386 (1980).