Argued and submitted October 13, 1993, affirmed on appeal; reversed and remanded with instructions on cross-appeal September 7, 1994

Robert LINDSEY,
*Appellant - Cross-Respondent,*

*v.*

Edgar MERZENICH
and Idylwood, Inc.,
by Edgar Merzenich as President,
*Respondents - Cross-Appellants.*

(90C-10605; CA A69646)

880 P2d 944

William G. Paulus argued the cause for appellant - cross-respondent. With him on the briefs was Garrett, Hemann, Robertson, Paulus, Jennings & Comstock, P.C.

J. Michael Alexander argued the cause for respondents - cross-appellants. With him on the briefs was Burt, Swanson, Lathen, Alexander & McCann.

Before Deits, Presiding Judge, and Riggs and Haselton,* Judges.

DEITS, P. J.

---

* Haselton, J., *vice* Durham, J.

## DEITS, P. J.

Plaintiff and defendant Merzenich are dentists who began practicing together in the 1960's. They and three other dentists formed defendant Idylwood, Inc., as the entity which furnished their operating facilities and through which they shared the expenses of their practices. In the early 1980's, plaintiff began reducing his practice. At roughly the same time, the dentists entered into an agreement that gave Idylwood the right of first refusal to buy the stock of any of its shareholders. Plaintiff offered to sell his shares, but the other dentists, on behalf of Idylwood, refused the offer as being too high.

In 1986, plaintiff initiated an action against Idylwood and the other dentists, seeking the offering price of his shares. That action was settled through a series of contracts among plaintiff, Merzenich and/or the corporation.[1] The first agreement, dated November 1, 1986, provided that plaintiff would furnish certain services to Idlywood and, after three years, Merzenich would purchase plaintiff's shares at his original asking price. That agreement provided that, with an exception that is not material to our discussion, all "claims are withdrawn by each party against the other." A contemporaneous agreement gave Merzenich an option to purchase the shares at that price.

Through a 1987 contract, the parties agreed that the corporation would provide support services for plaintiff's residual practice, in return for which he would pay the corporation specified percentages of his receipts. In 1988, a series of agreements and events were consummated. Merzenich and the corporation, respectively, purchased some of plaintiff's shares in Idylwood, and executed promissory notes for the unpaid balances. A June 30, 1988, "Stock Redemption and Purchase of Equipment" agreement between plaintiff and Idylwood contained a supplemental provision concerning Idylwood's entitlement to the percentage of plaintiff's receivables, which appears to be aimed at preserving Idylwood's rights to those payments, notwithstanding the sale of and payment for plaintiff's shares. That agreement also contains what purported to be an integration clause, "embod[ying] the

---

[1] The other dentists are not involved in the events beyond this point.

entire agreement of the parties." However, aside from those two provisions, the 1988 agreement pertains only to the sale and acquisition of plaintiff's interest, together with related warranties and conditions. A substantially similar agreement between plaintiff and Merzenich was executed on the same day, and it also contains an integration clause.

Plaintiff brought the present action on the promissory notes that Merzenich and Idylwood executed for the unpaid balances of the purchase price of plaintiff's shares. Both defendants admitted that the balances were unpaid, but they filed a number of affirmative defenses and counterclaims. The case was tried to a jury. After denying plaintiff's motions for directed verdicts on the counterclaims, the court submitted them to the jury. The jury awarded defendants damages on three of their counterclaims: (1) for the percentage of receipts that plaintiff owed the corporation; (2) for the corporation's services in connection with plaintiff's performance of dental work on behalf of another dentist; and (3) for unpaid overhead expenses that had accrued before the 1986 agreement took effect.[2]

The trial court subsequently granted plaintiff's motion for judgment notwithstanding the verdict as to the third counterclaim. The court explained that "it erred in denying plaintiff's motion for a directed verdict on [the] counterclaim for unpaid overhead expenses," because, as a matter of law,

"[t]he agreement of June 30, 1988 [between plaintiff and Idylwood], was * * * an integrated agreement which was inconsistent with and which thereby rendered unenforceable the parties' previous parol agreement for payment [of] overhead expenses by plaintiff * * * to * * * Idylwood."

Because the net judgment was for plaintiff, the trial court awarded him attorney fees pursuant to the provision for them in the promissory notes. However, the court sustained defendants' objections to part of the claimed amount of fees, primarily for legal services relating to the defense of the counterclaims.

---

[2] Although they are numbered differently in the pleadings, for ease of reference, we will refer to the three counterclaims by the numbers assigned them in the text.

Plaintiff appeals and defendants cross-appeal. Plaintiff assigns error to the denial of his motions for a directed verdict as to the first and second of the counterclaims, and contends that there was insufficient evidence to support the verdicts on them. We disagree. The evidence, including the evidence that plaintiff himself produced, *see Mayer v. Dowsett*, 240 Or 196, 219, 400 P2d 234 (1965), sufficed, and the trial court did not err by denying the motions.[3]

■       Plaintiff also assigns error to the denial of part of his claimed attorney fees. A hearing on defendants' objections was held, at which evidence was introduced. Plaintiff has not included a transcript of that hearing for our review. Given the absence of that part of the record and the abstract nature of plaintiff's argument under the assignment, plaintiff fails to demonstrate error. *See Universal Ideas Corp. v. Esty*, 84 Or App 541, 734 P2d 408 (1987).

In their cross-appeal, defendants assign error to the judgment n.o.v. on their counterclaim for the unpaid overhead expenses. The issue that the parties dispute is whether the court was correct in its conclusion that the June 30, 1988, agreement was an integrated entire agreement and had the effect of nullifying the parties' antecedent "parol" understanding about the sharing of expenses. We conclude that the trial court erred in that regard. Although the 1988 agreement contains an integration clause, it is difficult to say what it integrates, because the agreement deals almost entirely with the stock sale and related matters, none of which have any direct bearing on overhead expenses. At the same time, there were several other agreements among the parties, relating to matters that are not covered by the June, 1988, agreement.

As defendants point out, the 1986 agreement contains a waiver of claims provision that arguably could have been intended to include claims for overhead expenses. It is far likelier, however, that the 1986 agreement was intended to affect only the claims involved in the pending litigation that that agreement was executed to settle. In any event, the

---

[3] Defendants argue that plaintiff has not preserved the issue he now raises, because the grounds for his motion in the trial court differed from those he presents here. We think that plaintiff's arguments here and there are sufficiently similar for us to reach the merits of his contentions on appeal.

trial court made no finding on the effect of the 1986 agreement. Defendants note further:

"Plaintiff argues * * * that the November 1986 agreement, and the June 1988 agreement are both unambiguous and release him from liability for overhead expenses. However, only the earlier agreement has language of a general release. The latter agreement then has the 'integration' clause relied upon by the Plaintiff and the trial judge. It does not contain language generally releasing the Plaintiff from prior obligations. Thus, if the June 1988 contract superseded all prior agreements, such would include the 1986 contract allegedly releasing Plaintiff, and would allow the claim for overhead expenses.

"The analysis must start with the fact that it is uncontroverted that the parties saw the entire series of agreements as establishing their rights and obligations."

Defendants' overriding argument is that plaintiff and the trial court misperceive the question as a parol evidence and integration problem, and that the real question is what the series of contracts entered into between 1986 and 1988, read together, were intended to mean. Regardless of whether there is a meaningful distinction between these formulations of the question, we agree with defendants that the trial court erred in granting the judgment n.o.v. Given the multiplicity of writings, the different subjects that they covered and the other historical facts, the stray integration clause in the June, 1988, contract is not sufficient in itself to support the conclusion that that instrument embodied the parties' entire agreement. The facts here are not "susceptible of meaning only that a reasonable person in the circumstances would have understood the writing or group of writings" to be either the parties' exclusive agreement or a complete expression of their understanding concerning overhead expenses. *Wescold, Inc. v. Logan International, Ltd.*, 126 Or App 512, 520, 852 P2d 960 (1993), *rev den* 318 Or 459 (1994).

Affirmed on appeal; on cross-appeal, reversed and remanded with instructions to enter judgment on the verdict.