Argued and submitted April 2, reversed September 29,
reconsideration denied November 18,
petition for review denied December 29, 1982 (294 Or 295)

COBRA BUILDING & DEVELOPMENT, INC.,
*Respondent,*

*v.*

CITY OF SALEM et al,
*Appellants.*

(No. 114,704, CA A21381)

651 P2d 150

David J. De Martino, Assistant City Attorney, Salem, argued the cause for appellants. With him on the briefs was William J. Juza, City Attorney, Salem.

James M. Brown, Salem, argued the cause for respondent. With him on the brief were Don A. Dickey, and Douglas, Brown, Carson & Dickey, P.C., Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff (Cobra) brought this action to obtain from defendant (City) the amount of a waterline connection fee collected by City from a third party. The trial court awarded Cobra a money judgment on a theory of unjust enrichment. City appeals, and we reverse.

A preliminary issue concerns our scope of review. The complaint alleges that "[p]laintiff has no adequate remedy at law" and that defendant "has been unjustly enriched" and seeks a money judgment. The parties tried the case to the court sitting without a jury. Pursuant to ORCP 62A, the court made special findings of fact in support of its conclusion that City was unjustly enriched. Only in its respondent's brief does Cobra first point out that its claim is an action at law, not in equity. Cobra therefore argues that on review we must give the same force and effect to the court's fact findings as are given to a jury verdict. ORCP 62F. At oral argument counsel for City acknowledged that this case is properly an action at law.

Although the procedural distinctions between law and equity are largely eliminated, *see* ORCP 2, the distinction for purposes of appellate review remain important. *See* ORS 19.125. The remedy sought in this case is "restitution," which "is said to be applicable in any situation in which one person is accountable to another on the ground that otherwise one would unjustly benefit or the other would unjustly suffer loss." *Fleming v. Wineberg,* 253 Or 472, 482, 455 P2d 600 (1969).

■ The Oregon Supreme Court distinguished between law and equity theories underlying the restitution remedy in *Derenco v. Benj. Franklin Fed. Sav. and Loan,* 281 Or 533, 558, 577 P2d 477, *cert den* 439 US 1051 (1978):

"* * * Quasi-contracts and constructive trusts are parallel means at law and equity, respectively, of accomplishing substantial justice by preventing unjust enrichment and forcing restitution to the plaintiff of something which in equity and good conscience did not belong to the defendant. It is only proper to use a constructive trust when there is some specific property identified as belonging to the plaintiff. When the possession of no specific identifiable property is sought and only a money judgment is requested, quasi-contract is the remedy. * * *"

A money judgment was sought, and the case therefore is properly considered to be an action at law. Our review is not *de novo* but is instead for substantial evidence supporting the trial court's findings. *Lieuallen v. Heidenrich,* 259 Or 333, 485 P2d 1230 (1971). The legal effect of the facts is, however, subject to full review by us.

Consistent with the trial court's findings,[1] the facts may be summarized as follows. During the winter and early spring of 1978, Cobra applied for and received approval from City for a 12-lot subdivision named Windswept Meadows on the south side of Barnes Road. Cobra wished to proceed with development and not to wait until City extended its municipal water system to service the subdivision, so Cobra undertook, at its own expense, the construction of the necessary waterline. The line was to be built to City's specifications and was to be located under Barnes Road. Construction of the waterline began in April and was completed in May, 1978.

---

[1] The material portions of the trial court's findings are:

"* * * * *

"(2) The factual situation presented is a unique one in that during the Spring and Summer of 1979 [sic: 1978], two subdivision projects were being developed by Plaintiff and a third party with each subdivision on opposite sides of Barnes Road in Salem, Oregon. Both projects had the same needs including water.

"* * * * *

"(4) The acts of the Defendant City of Salem amounts to unjust enrichment as alleged in Plaintiff's First Claim for Relief.

"* * * * *

"(c) Plaintiff developed and constructed a subdivision known as Windswept Meadows in the City of Salem, Oregon.

"As part of this development, Plaintiff constructed a waterline extension under Barnes Road, Salem, Oregon. This extension was designed to serve Plaintiff's lots on the north [sic: south] side of Barnes Road.

"(d) As required by City, Plaintiff Dedicated those improvements to City which dedication was accepted on or about August 9, 1978.

"(e) The City, acting by and through Defendant Arnold, represented to Plaintiff that one-half (1/2) the cost of said improvements could be recovered for Plaintiff through the City's assessments of future users of the improvements. Defendant Arnold represented to Plaintiff that Defendant City would pay Plaintiff said sums after the assessments were paid to the City.

"(f) Following the Dedication and Acceptance by City, fees were collected by City from other users of the improvements, one-half of which was in the

Sometime during the late spring of 1978, Cobra became aware that another subdivision was being developed on the north side of Barnes Road by T & A Development (T & A). Cobra contacted the developers of that subdivision to discuss sharing the costs of the waterline. Several weeks later T & A informed Cobra that it had decided not to participte in the waterline project.

Subsequently, Cobra contacted defendant Arnold, a planning engineer for City, to seek help in recovering part of the waterline costs from T & A. Arnold was sympathetic to Cobra's position, in that T & A would have had to install the waterline if Cobra had not and that it was inequitable in those circumstances for Cobra alone to bear the costs. Arnold was not then aware that Cobra was already committed to construction of the waterline. He told Cobra that he would attempt to seek T & A's cooperation in sharing the waterline costs.

In July, 1978, City inspected and tested the completed waterline, and on August 2, 1978, City accepted the line pursuant to its ordinance, Salem Rev. Code § 70-080, which provides:

"All public water mains and sewer lines which are privately constructed on public right of way or easements and which are connected to the public water and sewer

---

sum of $1,993.00. No portion of this amount has been paid to Plaintiff and City has refused to pay such, contrary to the aforesaid representations and agreement.

"(g) until after the dedication, defendants failed to disclose to plaintiff, and plaintiff was not otherwise aware that city had a policy not to collect fees for the developer in such an instance unless the parties entered into a written agreement prior to dedication.

"(h) Plaintiff has no adequate remedy at law.

"(i) The City has been unjustly enriched and the Court should order the payment to Plaintiff in the amount of $1,993.00.

"(5) The conduct of the Defendant was such that Plaintiff could reasonably form certain concepts regarding his costs in constructing the water line and as to its rights to collect from the Defendant. This finding is confirmed with regard to unjust enrichment by the passage of the Ordinance (Exhibit Q) and the fact that the City held up granting the water permits to the third party developers to the north of Plaintiff's project.

"* * * * *"

systems accepted by the director for city maintenance shall be considered as dedicated to public use and shall become a part of the municipal water and sewer systems. No reimbursement shall be made for the cost of such lines."

Cobra did not expect to be reimbursed by City, but believed that City would require T & A to pay half of the waterline costs to Cobra, or to City on behalf of Cobra, before City would allow T & A to connect to the waterline.

On August 28, 1978, City enacted an ordinance that, for the first time, authorized collection of a "connection fee." The ordinance, Salem Rev. Code § 21.340, provides:

"Any property allowed to connect to an existing water main inside or outside the City may pay a connection fee in lieu of an assessment equal to the amount of the assessment."

Acting under the authority of this ordinance, Arnold refused to allow T & A to connect to the waterline until T & A paid a $1,993 connection fee. The amount was equal to one-half of Cobra's waterline construction cost. T & A paid this amount in October, 1978, and was then permitted to connect to the line.

City incurred no costs in the construction of the waterline, but charged T & A a "connection fee" equal to one-half of Cobra's construction costs. City did not turn this money over to Cobra. Cobra brought this action to recover the $1,993 from City.[2]

■　　The facts as found by the trial court do not as a matter of law support a finding of unjust enrichment and an award of restitution. Cobra had committed itself to construction of the waterline and expected no reimbursement. Cobra expected to, and did, dedicate the line to City, knowing that City was not required to reimburse Cobra for the line. When the line was dedicated in August, 1978, Cobra's expectations were met, and it had no further interest in the line. City subsequently collected a connec-

---

[2] Cobra's complaint alleges causes of action for unjust enrichment, breach of contract and fraud. The trial court found no fraud or breach of contract and held for Cobra only on the basis of unjust enrichment. Cobra does not challenge the denial of its claim on the other theories.

tion fee from T & A as authorized by the ordinance. The connection fee in lieu of an assessment is not necessarily a recoupment of the cost of installing the waterline in question, which became part of the municipal water supply system. The connection fee also serves as a recoupment of the capital cost of providing the water supply capacity for additional users. City owns the waterline and is entitled to collect connection fees or assessments for the water system. Cobra has no claim to any of the fees collected by City.

The trial court found that Arnold had represented to Cobra that City could collect one-half of the waterline costs from T & A and would turn over this payment to Cobra. Aside from Arnold's lack of authority, under City's ordinances quoted above, to make such representations, Cobra, in any event, did not rely on the statements or change its position to its detriment. Cobra had already constructed the waterline and turned it over to City. Cobra simply hoped, after the fact, to regain a portion of its investment. The timing of the adoption of City's connection fee ordinance, and the amount of the fee charged T & A, are merely fortuitous events.

Reversed.