Argued and submitted Mary 26, reversed and remanded
with instructions June 27, 1984

# HAGEN,
*Appellant,*

*v.*

# O'CONNELL, GOYAK & BALL,
*Respondent.*

(A8109-05362; CA A29231)

683 P2d 563

James H. Gidley, Portland, argued the cause and filed the brief for appellant.

Peter H. Glade, Portland, argued the cause for respondent. With him on the brief was O'Connell, Goyak, Jensen & Krage, P.C., Portland.

Before Gillette, Presiding Judge, Joseph, Chief Judge, and Van Hoomissen, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

In 1976 plaintiff, an attorney, became a shareholder in the defendant legal professional corporation. In February, 1979, the directors and shareholders of the corporation met and discussed a means to evaluate the stock of the corporation and, also, a buy-sell provision which would apply to the stock of a shareholder on termination of employment. In 1980, plaintiff terminated his employment. In 1981, he brought an action seeking an appraisal and an accounting for the stock he held in the corporation and also seeking declaratory relief.

The trial court found, and we are bound by that finding, that a buy-sell agreement existed between the shareholders of defendant.[1] The pertinent terms of that agreement, contained in the draft minutes of the February meeting, are:

"1. *Valuation of Professional Corporation.* For the purposes of valuing all of the outstanding stock of the professional corporation, it was decided that the following formula would be applied: gross receipts of professional income during the corporation's prior fiscal year less nonlawyer-related expenses equals the total valuation of the corporation's outstanding stock.

"* * * * *

"5. *Termination with No Noncompete.* In the event * * * a shareholder voluntarily terminates his employment and does not enter into a binding noncompetition agreement with the corporation, said terminating shareholder shall be obligated to sell * * * at a price per share using the [Valuation of Professional Corporation] formula; however, said price will be reduced by a penalty provision of forty percent (40%). * * * Further, said installment payments on the buy-out of the terminating shareholder shall be offset by an amount equal to one-half (1/2) of the average annual gross billings billed to those clients taken by the terminating shareholder from the corporation. * * * [T]he gross billings charged to the clients taken by the terminating shareholder during the twelve (12) month period preceding the date of severance will be used. After the expiration of the twelve (12) month period, the fees charged by the terminating shareholder to the client taken from the firm for said period will be added to the figure used at

---

[1] Although our review of plaintiff's claim for relief is *de novo,* our review of the affirmative defense that a contract existed between the parties is as in an action at law. *See McClory v. Gay,* 45 Or App 561, 608 P2d 1213 (1980).

the time of the severance and these two figures averaged to determine the amount of the offset of the purchase price. Any adjustment in the offset as a result of this redetermination shall be applied toward any balance due the terminating shareholder."

The issue is whether the stock valuation provision is enforceable. The trial court found that it is. Plaintiff argues that the noncompetition aspect of paragraph 5 renders the provision unenforceable. Defendant contends that the provision does not restrict competition, but rather merely implements an adjustment to the value of the stock in recognition of the fact that the value of the corporation would be reduced if a shareholder leaves and takes clients with him.

The difficulty with defendant's position is that the provision goes beyond "anti-raid" protection. If a shareholder were to leave the corporation without a noncompetition agreement, irrespective of whether clients go with him, the value of his shares would be reduced by 40 percent. The only way to avoid that penalty is for the withdrawing shareholder to enter into a "binding noncompetition agreement with the corporation," which would be in violation of the Rules of Professional Responsibility, DR 2-108(A):

"A lawyer shall not be a party to or participate in a partnership or employment agreement with another lawyer that restricts the right of a lawyer to practice law after the termination of a relationship created by the agreement, except as a condition to payment of retirement benefits."

In *Gray v. Martin,* 63 Or App 173, 663 P2d 1285, *rev den* 295 Or 541 (1933), we considered a noncompetition provision in the light of DR 2-108(A) and concluded that the rule made the provision unenforceable. Defendant seeks to distinguish *Gray,* because in that case the noncompetition clause prevented plaintiff from receiving additional compensation and here the provision goes only to the value of the stock.

Defendant's emphasis is misplaced. The disciplinary rule is designed to "govern the relationships between attorneys for the protection of the public," *Gray v. Martin, supra,* 63 Or App at 182, and is a flat prohibition against an attorney entering a noncompetition agreement if the attorney intends to remain in practice. Under the provisions of paragraph 5,

there is no way for an attorney to redeem stock at full value except by violating the disciplinary rule. The provision, as in *Gray,*

"* * * fits squarely within the prohibition contained in DR 2-108(A). It affects [plaintiff's] right to practice law * * * by requiring that if he does so he loses the benefits that would otherwise be his. This is certainly a restriction on his right to practice." 63 Or App at 181-82.

The 40 percent penalty provision in paragraph 5 is unenforceable, because it is contrary to the public policy of making legal counsel available, insofar as possible, according to the wishes of a client. However, even though the penalty provision cannot be enforced, a professional corporation must have the right to adjust the value of its stock according to the effect created when a withdrawing shareholder takes clients from the firm. If the entire agreement is not contrary to public policy, although a severable provision is invalid, the remaining provisions of the contract may be enforced. *W. J. Seufert Land Co. v. Greenfield,* 262 Or 83, 87, 496 P2d 197 (1972). The penalty provision here is severable from the other provisions of paragraph 5. The adjustment in the stock's value can be determined by the formula in the rest of the paragraph, which we conclude would result in a valuation that bears a reasonable relationship to the probable loss to the firm. The value of plaintiff's stock should be calculated according to paragraph 1 and the offset provisions of paragraph 5.

Reversed and remanded for an appraisal and accounting not inconsistent with this opinion.