Argued and submitted September 21, reversed December 30, 1992, reconsideration
denied April 14, petition for review denied May 25, 1993 (316 Or 527)

BURT, VETTERLEIN & BUSHNELL, P.C.,
a professional corporation,
*Appellant,*

*v.*

George V. STEIN,
*Respondent.*

(90-02-01058; CA A71264)

844 P2d 239

Gregory Snook, Portland, argued the cause for appellant. On the briefs were Barbara L. Johnston and Burt, Vetterlein & Bushnell, P.C., Portland.

Karen Saul Stayer, Portland, argued the cause for respondent. With her on the brief was Farleigh, Wada & Witt, P.C., Portland.

Before Joseph, Chief Judge, and Deits and Durham, Judges.

JOSEPH, C. J.

Deits, J., dissenting.

## JOSEPH, C. J.

Plaintiff, a law firm, brought this action to recover on defendant's guaranty of the debt that his brother had incurred for legal services. Judgment was entered for defendant after a trial to the court. He raised 7 affirmative defenses and asserts that the judgment could properly be based on any of 5 of them.[1]

In June, 1988, Alexander Stein (Stein) executed a retainer agreement with plaintiff for legal services. His account was soon in arrears and, in September 1988, to ensure plaintiff's continued services, he assigned to plaintiff 71,500 shares of stock in In Focus Systems, Inc.[2] By December 1988, Stein's account was again in arrears, and plaintiff negotiated with Battery Ventures to sell the In Focus stock. Before that sale was to be consummated, however, $40,000 was paid on Stein's account. On August 30, 1989, Stein "assigned" to plaintiff stock in 3 other corporations (the Premium Companies), which he and defendant owned as the sole shareholders. On September 25, 1989, Stein signed a confession of judgment for $54,936.23 on plaintiff's claim against him and sheriff's sales were scheduled for the In Focus stock on October 31 and the Premium Companies stock on November 16. Plaintiff purchased the In Focus stock at the first sale for $5,000.

---

[1] Defendant's first affirmative defense was based on personal jurisdiction. That issue was decided against him and is not raised on appeal. His defenses also included that plaintiff had breached a duty of good faith and fair dealing. However, he alleged no facts to support that defense, presented no evidence to support it at trial and makes no argument about it on appeal.

[2] The letter that plaintiff sent to Stein to memorialize that transfer reads, in part:

"Your assignment is for the purpose of paying all outstanding fees, costs, and advances due to [plaintiff], by you, AVS Research, Inc., and AVS Capital Fund, Ltd., * * * either now or in the future (hereinafter referred to as 'Obligations'). It is not a pledge of the stock, nor a transfer of a security interest in the stock. The stock will be returned to you upon full payment of the Obligations. If, however, such Obligations are not paid within 30 days of our formal, written demand therefor, [plaintiff] shall be free to sell the stock to satisfy the Obligations upon any terms it, in the exercise of its sole discretion, and with no obligation to you to obtain a 'best price' or otherwise look after your interests, deems appropriate. Any funds received by [plaintiff] in excess of the Obligations * * * shall be returned to you."

Although the letter says that the transaction was not "a transfer of a security interest," both parties have treated it as such on appeal and we accept that characterization.

On November 1, 1989, after the In Focus stock had been sold to plaintiff but before the Premium Companies stock was sold, Stein and plaintiff entered into another agreement, which provided that plaintiff would release its interest in the Premium Companies stock, if Stein were to: (a) pay plaintiff $1,818.47 on or before November 2, 1989; (b) deliver defendant's guaranty (the writing for which was attached) to plaintiff by November 3, 1989; (c) pay plaintiff $12,000 on or before November 7, 1989; and (d) pay the balance, $45,225.35, on or before November 15, 1989. That agreement also provided that, on "timely performance," plaintiff would sell Stein the 71,500 shares of In Focus stock that it had bought the day before for the price that plaintiff paid, plus interest: $5,026.30.

Stein made the first payment and, on November 2, 1989, defendant executed the guaranty.[3] However, Stein failed to make the November 7 and November 15 payments.

---

[3] That contract reads:

*"GUARANTY*

"FOR GOOD AND VALUABLE CONSIDERATION, the receipt and sufficiency of which is hereby acknowledged (including Burt & Gordon, P.C.'s contemplated release to Alexander Stein ('Stein') (upon the performance hereof) of certain collateral in which I have a significant economic and personal interest), I hereby unconditionally guarantee the prompt and timely payment of all sums owed to Burt & Gordon, P.C. by Stein pursuant to that certain retainer agreement, dated June 8, 1988.

"Burt & Gordon, P.C. and Stein may make renewals, modifications, and extensions of the obligation guaranteed hereby without in any way affecting the liability hereunder of the undersigned, and notice of acceptance of this Guaranty, as well as all demands, presentments, notices of protest, and notices of every kind or nature, including those of any action or nonaction on the part of Burt & Gordon, P.C., Stein, or anyone else, are hereby waived. Upon any default of Stein, Burt & Gordon, P.C., may, at its option, proceed directly and at once, without notice, against the undersigned to collect and recover the full amount hereby guaranteed, or any portion thereof, without proceeding against Stein or any other person, or foreclosing upon, selling, or otherwise disposing of or collecting or applying any property, real or personal, securing said obligation or any renewals, modifications, or extensions thereof.

"This Guaranty shall be construed under the laws of the state of Oregon, and all disputes shall be litigated in Multnomah County, Oregon. In the event that this Guaranty is placed in the hands of an attorney for collection, the prevailing party shall be entitled to its reasonable attorneys' fees and collection costs, whether or not a suit is filed, and including appeals of any suit if filed.

"This Guaranty has been negotiated at arms' length with the benefit of or opportunity to seek legal counsel and, accordingly, shall not be construed against either party. It has been prepared by Burt & Gordon, P.C. The undersigned is

On November 15, plaintiff and defendant had a number of conversations and, on November 16, defendant sent a letter by facsimile transmission to plaintiff to memorialize a new agreement that he thought that they had reached. After reviewing that letter, plaintiff responded, also by facsimile:

"Although we discussed your settlement of [Stein's] outstanding account balance yesterday afternoon * * *, we did *not* agree to the terms set forth in your correspondence. Your proposed terms are, in fact, unacceptable to [plaintiff]. * * *

"After completion of the Sheriff's sale, I would be pleased to discuss the settlement of your guaranty of [Stein's] obligations to [plaintiff], as well as your possible purchase of the Premium Companies' [*sic*] and In Focus Systems, Inc., stock."

Defendant arranged for his sister to appear at the sale to bid on the Premium Companies stock, but negotiations continued. On the morning of the sale, the parties held a telephone conference, after which defendant told his sister that he would not need her to attend the sale, because he and plaintiff had reached yet another agreement. The sheriff's sale proceeded and plaintiff purchased the Premium Companies stock for $1,000.

On December 15, 1989, defendant's attorney wrote a letter to plaintiff "to recap the events" and to "convey [defendant's] position with regard to his guaranty and the In Focus [s]tock." That letter reads, in part:

"During our conference call we agreed that your firm would sell to [defendant] the In Focus stock which you had previously executed upon in exchange for * * * $5,000; you would sell to [defendant] the Premium Companies stock which you would buy at your execution sale in exchange for payment of * * * $55,231; [defendant's] guaranty would be discharged; your firm would issue a letter to [Stein] to the effect that the debt owed to your firm had been paid in full and that all outstanding offers of payment were null and void; and your firm would represent and warrant that it had a perfected security interest in the shares of stock, had sold the stock by

advised and by his execution hereof agrees that he should have this Guaranty reviewed by his own independent legal counsel.

"DATED: *November 2, 1989*."

public sale * * *, that it had purchased the shares of stock and is transferring all of its rights as purchaser in that sale. Based upon that agreement, [defendant's] sister was instructed not to attend the sale to bid for the Premium Companies' stock. * * *

"After the sale * * *, you called me to modify the agreement * * *. [Y]our firm wanted to escrow the payments so that your law firm could transfer the stock * * * back to [Stein], who would then transfer the stock to [defendant]. On November 17 you proposed two other modifications for structuring the transaction which were rejected by [defendant].

"* * * * *

"Subsequent to our telephone conversation on the 17th of November, [defendant] has found out that In Focus disputes your law firm's ownership of the shares of stock and had refused to register the shares in the name of your firm. In addition, since the date of the sale, I have found out that the Premium Companies' share certificates which you sold at execution, had been previously cancelled by the Premium Companies sometime in May of 1989. * * *

"Given your law firm's unwillingness to follow through with the sale of the In Focus and Premium Companies' stock and the questions which have arisen regarding your firm's ability to transfer ownership in such shares of stock, [defendant] hereby rescinds any obligation which he may have to purchase the Premium Companies and In Focus shares of stock from your firm. * * *

"The purpose of this letter is also to notify you that it is [defendant's] position that the guaranty given to your firm is invalid and unenforceable[.] * * * While it would appear to be unlikely that your firm would do any further legal work for [Stein] or any of the companies he owns, [defendant] hereby terminates his guaranty agreement as to any future work which your firm may perform for [Stein] or his companies."

Plaintiff's single assignment of error about the trial court's judgment on the merits is:

"The trial court erred in entering the decision of the trial court. The decision provided:

"*General Finding of Fact*[:] In favor of defendant and against the plaintiff.

"*Conclusion of Law*[:] Defendant have judgment against plaintiff.

> "*Comment*[:] As the fact finder, I found the testimony of the defendant logical, credible and convincing."

The assignment is necessarily broad, given that the court did not articulate any reasons for its decision on the merits. Plaintiff's summary statement of its argument is equally broad: "There was no substantial evidence to support the trial court's general finding of fact against plaintiff." The trial court supplied more insight into its reasoning in its order allowing attorney fees by finding that "a guaranty contract existed between the parties" but that

> "defendant was relieved of his obligation to perform pursuant to the guaranty based upon the Courts [*sic*] finding that the most compelling, although not necessarily the exclusive defense, to the guaranty was a failure of consideration."

Plaintiff, therefore, argues each of the defenses in the context of its assignment of error about the award of attorney fees, but incorporates all of those arguments by reference into its first assignment of error on the merits. The defenses include: failure of consideration; intentional misrepresentation; negligent or innocent misrepresentation; failure to hold commercially reasonable sales; and estoppel.[4]

■      Plaintiff's action to recover on the guaranty is at law, and we review for substantial evidence to support the trial court's findings. *Lieuallen v. Heidenrich*, 259 Or 333, 485 P2d 1230 (1971). However, factual findings relied on to support an affirmative defense are reviewed according to the character of the defense. *Hagen v. O'Connell, Goyak & Ball*, 68 Or App 700, 702 n 1, 683 P2d 563 (1984).

■■      Plaintiff argues that failure of consideration as a defense amounts to an equitable claim for rescission of the contract and should be reviewed *de novo*. That is wrong. It is a legal defense, and we review for substantial evidence. Plaintiff also contends that there was consideration for the contract and that the consideration moved to Stein, because the guaranty formed a part of the overall agreement with him, which created new payment terms for the debt without his having to pay collection expenses already accrued and also contained a promise to reconvey the In Focus stock for the

---

[4] *See also* note 1, *supra.*

same amount that plaintiff had bid at the October 31 sale. The guaranty also included consideration that flowed to Stein by allowing him more time to pay the debt without having to bid at auction to get back the Premium Companies stock, which was already subject to being sold on execution. Plaintiff is correct that those things were sufficient to create a binding contract, because consideration need not move to the guarantor if it moves to the principal debtor. *Citizens Bank v. Pioneer Investment*, 271 Or 60, 63, 530 P2d 841 (1975); *Ethyl Corp. v. Jalbert*, 270 Or 651, 654, 529 P2d 368 (1974).

However, defendant did not argue that there was an *absence* of consideration, and the trial court found that the guaranty was a valid contract. *See Restatement (Second) Contracts*, § 237, *comment a* (1981). Rather, he argues that, in addition to the consideration that flowed to Stein, plaintiff had promised to give him a first priority interest in the stock in exchange for his promise to guarantee payment of Stein's debt. He contends that plaintiff failed to perform, because (1) it failed to tell him that it had already "executed on" the stock and had sold the In Focus stock at auction, (2) it did not cancel or postpone the sale of Premium Companies stock, (3) it did not notify him of Stein's default when it happened and (4) it did not timely notify defendant of the scheduled sale of Premium Companies stock. Although we review the trial court's findings in the light most favorable to defendant to determine if there is any competent evidence to support them, not *de novo*, the legal effect of the facts are subject to full review. *Cobra Building & Devel., Inc. v. City of Salem*, 59 Or App 441, 444, 651 P2d 150, *rev den* 294 Or 295 (1982).

A party that asserts an affirmative defense of failure of consideration has the burden to prove it. *Osborne v. Groppo et ux.*, 194 Or 692, 695, 244 P2d 609 (1952). For failure of consideration to excuse a defendant's nonperformance, there must be some evidence to show that the contract provided for the consideration that the defendant alleges and that the plaintiff materially failed to do what the contract required.

Plaintiff argues first that there was insufficient evidence for the court to find that it promised to give defendant a first priority interest. The only evidence that could support defendant's view is his own testimony that he believed Stein, who told him that he would have a first priority security

interest in the stock.[5] However, we need not decide whether that evidence is sufficient to support the trial court's finding that plaintiff made that promise. As plaintiff observes, in order to affirm the trial court's judgment, we need evidence that shows the nature of the alleged consideration and also evidence of whether and how that purported consideration failed. We conclude that the judgment cannot be affirmed on the basis of the failure of consideration defense because, even if we assume that defendant could prove all the facts that he alleges, they do not lead to the legal conclusion that plaintiff's conduct excused defendant's performance.

Assuming that plaintiff did not tell defendant on November 2 that it had already "executed on"[6] all of the stock and had even sold the In Focus stock, that does not constitute a failure to perform under the guaranty. There was nothing in the contract that expressly or impliedly required plaintiff to provide that information. The existence of the judgment against Stein could not have prejudiced defendant's rights under the contract, because it did not increase the debt that defendant agreed to pay and it did not render plaintiff unable to transfer to defendant its interest in the Premium Companies stock. The fact that the In Focus shares had been sold did not preclude plaintiff's performance either, because plaintiff had purchased the stock and, therefore, could still transfer its interest to defendant on defendant's performance.

Similarly, plaintiff's failure to cancel or postpone the sale could not constitute a failure to perform, because defendant presented no evidence that plaintiff promised not to foreclose on the collateral in the face of a default by both Stein and defendant. The sale was not scheduled to occur until *after* the last payment was due, and it could have been canceled if Stein or defendant had made the payments.

The trial court also could not properly have based its decision on plaintiff's failure to notify defendant of Stein's default. The guaranty expressly provides that defendant

"hereby unconditionally guarantee[s] the prompt and timely payment of all sums owed to [plaintiff]."

---

[5] Plaintiff did not object to that testimony.

[6] Defendant uses the term "executed on" the stock to refer to plaintiff's obtaining a judgment, rather than to its receipt of funds from the sheriff's sale.

It also provides that

> "all demands, presentments, notices of protest, and notices of every kind or nature, *including those of any action or nonaction on the part of [plaintiff], Stein, or anyone else*, are hereby waived." (Emphasis supplied.)

Defendant presented no evidence that the guaranty meant anything different from or additional to what those words say, and he presented no evidence of any other agreement that required notification. Plaintiff had no duty to inform defendant of Stein's default.

Because there was no evidence to support the trial court's legal conclusion that defendant's performance was excused for failure of consideration, the judgment cannot be affirmed on that ground.

■ Plaintiff argues that defendant also did not prove his affirmative defenses of intentional, negligent or innocent misrepresentation. Defendant based those defenses on plaintiff's failure to disclose: (1) that it had "already executed on and sold the In Focus stock to itself at a sheriff's sale," (2) that it had "obtained a judgment against [Stein] pursuant to a confession of judgment" and (3) that "it had executed on the Premium Companies' stock, and had set a sale date of November 16, 1989."[7] Plaintiff contends that there is no evidence to show that it concealed or misled defendant about any of those facts, intentionally or otherwise; all of those allegations are about omissions and, in the absence of active concealment, plaintiff had no duty to inform; and "any representation regarding the ownership or sale of In Focus stock was not material to defendant's entering into the guaranty." Moreover, it argues, the evidence shows that defendant knew or had reason to know the facts.

The evidence is clear that plaintiff did not actively conceal any information about which defendant complains. All of it was disclosed in the plaintiff-Stein agreement, to

---

[7] Defendant also argues that plaintiff misled defendant by inducing or allowing him to believe that he would have a first priority security interest in the collateral. Because we have assumed that plaintiff was required to deliver a first priority security interest in the stock after defendant's performance, we need not address any contention that plaintiff misled him about that.

which the guaranty document was originally attached. Defendant testified that he saw the agreement before he signed the guaranty. The last paragraph of that document promises that, if Stein were timely to perform the 4 requirements, then plaintiff would

> "sell [Stein] its 71,500 shares of common stock in In Focus Systems at 3:00 p.m. on November 15, 1989, in exchange for your contemporaneous payment (by cashier's check) of $5,026.30, calculated as follows—

> "$5000.00  *Purchase price at Sheriff's Sale*
> "   26.30  Interest 10/31/89 to 11/15/89

> "$5026.30  TOTAL"
> (Emphasis supplied.)

The existence and amount of the underlying judgment was disclosed in that document under condition "(c)," which specified that $5,225.21 of the November 7 payment would be "applied to your unsatisfied Judgment of $50,225.21." A similar entry appears under item "(d)," which required payment of the balance, $45,225.35, on November 15. There was no evidence that plaintiff did anything to prevent defendant from seeing and reading the plaintiff-Stein agreement. Therefore, there was no support for a finding that plaintiff intentionally misrepresented the facts.

■    There is also no evidence that plaintiff's failure to alert defendant to the existence of the judgment and the sales had any effect on his decision to bind himself as Stein's guarantor. *See Gardner v. Meiling, supra; see also Federici et ux v. Lehman et al,* 230 Or 70, 368 P2d 611 (1962). He testified that he already believed that he had a prior lien on the In Focus stock, and he wanted a security interest in the Premium Companies stock to prevent it from falling into the hands of "strangers."

> "Q   * * * The question was what did you have in mind when you interpreted this of 'certain collateral in which I have a significant economic and personal interest'? * * *

> "A   Let me try it again. * * * I owned 51 per cent or thereabouts of the Premium Companies, okay. That's why I answered it that way. I was not focusing on the fact that I also have documents that * * * shows [*sic*] a lien on the In Focus stocks for monies that I'd lent my brother for three years past but—

"Q   What was your interest in the Premium [Companies] stock?

"A   To not have an unknown silent — or not silent, but a new minority partner that would suddenly show up with 49 per cent of the stock and say, 'Gee, I'm your new partner.' "

Plaintiff's failure to disclose the facts about which defendant complains could not reasonably have affected his decision, because the facts themselves could not have prevented plaintiff from transferring the stock to defendant if he had performed his end of the bargain. Defendant testified that that was all he was concerned about. Therefore, the misrepresentation defenses fail.

■    Plaintiff argues that the trial court's judgment could not properly have been based on the defense that it failed to hold commercially reasonable sales. Defendant asserts that the November 16 sale was commercially unreasonable, because (1) plaintiff knew that he was concerned about the Premium Companies stock, yet failed to provide him adequate or reasonable notice of the sale; (2) plaintiff failed to obtain a reasonable price for the In Focus stock; and (3) the underlying judgment is void for want of jurisdiction.

Plaintiff contends that no law establishes that a judgment creditor has a duty to provide notice of execution to a person who became the debtor's guarantor after the judgment was entered. That is the only basis on which defendant asserts that the November 16 sale was unreasonable. Defendant did not identify a basis for such a duty, and we find none. *See* ORS 23.425; ORS 23.450.

■    Plaintiff points out that defendant did not directly attack the reasonableness of the price paid for the In Focus stock by seeking to have the October sale set aside. Therefore, it contends, he could prevail on that theory only if, by paying the price that it paid, plaintiff somehow breached a contractual duty under the guaranty. Because the sale occurred before the guaranty was executed, plaintiff contends, no duty concerning the sale could have been created by the guaranty. Defendant does not respond to those arguments, and we know of no meaningful response that could be made. The trial court's judgment could not properly have been based on that theory.

Lack of jurisdiction for the underlying judgment is the only basis on which a collateral attack on the sales could be made. *Ketcham v. Selles*, 304 Or 529, 535, 748 P2d 67 (1987). That was the basis of defendant's third argument below. However, none of his arguments on that issue has merit in the context of this proceeding.[8]

■          Finally, plaintiff argues that the trial court's judgment could not properly have been based on the defense of estoppel. Defendant's theory is that he relied on the agreement that he believed that he had reached with plaintiff during the telephone conference on November 16 and told his sister not to attend the sale of the Premium Companies stock. He does not argue, however, that he relied on that agreement as his reason for failing to make the payments that were due unconditionally under the guaranty on November 7 and November 15. He also does not argue that he suffered losses due to that reliance that should be set off against the debt that he owes under the guaranty, and there is no indication in the record that that could have been the basis for the trial court's judgment. He argues only that it is a complete defense to enforcement of the guaranty. That argument has no merit.

Because we reverse the trial court on the merits, we also reverse its award of attorney fees.

Reversed.

**DEITS, J.,** dissenting.

I am unable to agree with the majority's holding, because the arguments that lead the majority to reject the trial court's favorable ruling on defendant's affirmative defense of failure of consideration do not seem to me to have been raised by plaintiff adequately, if at all. As I read plaintiff's briefs, the necessary premise of its argument on that issue is that there was insufficient evidence to support the court's findings that plaintiff agreed to give defendant a first priority interest in the In Focus Systems, Inc., and Premium

---

[8] Stein moved to have the sales set aside, apparently on the basis of a jurisdictional defect in the judgment. The trial court in that case denied Stein's motion, and he appealed. That case is currently in this court, *Burt, Vetterlein & Bushnell, P.C. v. Stein* (A69147), and we express no opinion about the validity of any arguments made there.

Companies shares as consideration for the guaranty. Defendant's evidence on that issue was unimposing, and it might have been inadmissible or incompetent. However, plaintiff does not make those contentions. It argues only that, given its full weight, the evidence does not permit the finding.

Our review is not *de novo*. There was enough evidence for the trial court to make the finding that it did. Because we can tell from the record that the defense was one of the bases for the trial court's judgment and because it is an absolute defense, I would affirm.

I respectfully dissent.