81 F.3d 169
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
John MITCHELL, Plaintiff-Appellant,
v.
BURT & VETTERLEIN, P.C.; Mark Gordon, Defendants-Appellees,
v.
Mark GORDON, Third-party-defendant.
John H. MITCHELL, Plaintiff-Appellant,
v.
Robert BURT; Burt & Vetterlein, P.C.; Andrea L. Bushnell,
Defendants-Appellees.
 Nos. 93-36186, 94-35292.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 7, 1995.
Decided March 29, 1996.
 
 Before: CANBY, REINHARDT, and O'SCANNLAIN, Circuit Judges.*
 
 
 1
 MEMORANDUM**
 
 
 2
 Plaintiff Mitchell, trustee for the chapter 11 bankruptcy of Alexander V. Stein, appeals the district court's summary judgment in favor of defendants, Burt & Vetterlein, P.C. (formerly Burt and Gordon, or "B & G")[1], and Mark Gordon. The trustee seeks to recover from the defendants, attorneys who represented Stein, proceeds from their sale of stock transferred to them by Stein, as well as damages. The trustee contends that transfer of the stock from Stein to B & G was fraudulent, that B & G breached its fiduciary duty to Stein, and that B & G breached the implied covenant of good faith and fair dealing in its contract of professional services with Stein.[2] The district court granted summary judgment to B & G and Gordon. The trustee appeals. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.
 
 I. Fraudulent Transfer
 
 3
 The district court concluded that the transfer of stock by Stein to B & G was a legitimate transfer of assets in payment for past and future legal services. See Nelson v. Hansen, 565 P.2d 727, 731 (Or.1977). We conclude, however, that there were sufficient badges of fraud attending the transfer to raise a disputed issue of material fact for trial.
 
 
 4
 A transfer is fraudulent if made with actual intent to hinder, delay or defraud creditors, or if the transferor did not receive reasonably equivalent value and was insolvent or would incur debts beyond his ability to pay. Or.Rev.Stat. §§ 95.230(1)(a), (b)(A); 95.240.
 
 
 5
 At the time of the transfer from Stein to B & G, Stein owed $19,403 to that firm in legal fees. The only indication at that time of the value of the stock was that Stein had paid $572,000 for it less than six weeks earlier. Even though further legal services were contemplated, this disparity is so large that it clearly raises a jury question as to equivalent value. There is also sufficient evidence to permit a jury to find that Stein was insolvent. He had not been paying his attorneys' fees, and the district court found that he was some $32 million in debt.
 
 
 6
 B & G contends that the value cannot be disproportionate because, despite the recitals in Gordon's letter, the transfer was merely of a security interest. Any equity beyond the security for the actual debt remained available to Stein's creditors. See Uniform Fraudulent Transfers Act § 4, comment 3. Whether the transfer was one of a security interest, however, is in dispute. Gordon's letter itself is sufficient to send that issue to a jury.
 
 
 7
 A jury question of intent to hinder or defraud creditors is also presented by the disparity in value when combined with the peculiar circumstances of the transfer, memorialized in the letter from Gordon to Stein. The stock was transferred in fact, but the letter recited that the stock was neither pledged nor given as security, although it could be sold and applied to the debt for fees if Stein did not otherwise pay them. The stock certificate indicated that it was subject to a restriction on transfer, and Stein was under a cease and desist order preventing him from selling any securities in Oregon. The transfer was not reported to IFS by either Stein or B & G for over three months. See Or.Rev.Stat. § 95.230(2)(c) (concealment of transfer may be considered as factor in determining fraudulent intent). From all of these facts, a rational jury could find that Stein's actual intent was to hinder, delay or defraud his creditors.
 
 
 8
 B & G presents one last argument that it asserts must override all of the above analysis. B & G contends that the entire original transfer of IFS stock to B & G was rendered moot when B & G obtained a confession of judgment and levied on the stock as a judgment creditor. B & G asserts that the price received at a properly noticed sheriff's sale in execution of judgment is conclusively presumed to be commercially reasonable and to establish equivalent value. The validity of that proposition is not self-evident. B & G relies upon our decision in In re BFP, 974 F.2d 1144 (9th Cir.1992), so holding with regard to a real estate foreclosure sale. The Supreme Court has since affirmed BFP, but in doing so it noted:
 
 
 9
 We emphasize that our opinion today covers only mortgage foreclosures of real estate. The considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different.
 
 
 10
 BFP v. Resolution Trust Corp., 114 S.Ct. 1757, 1761 n. 3 (1994). We are not convinced that the considerations underlying the need for stability of real estate titles would necessarily apply to a forced sale of personalty at an unconscionably low price. See Ahlstrom v. Lyon, 131 P.2d 219 (Or.1942) (sale of $10,000 worth of personalty for $250 in partial satisfaction of judgment of $659.54 void because price was so grossly inadequate as to shock the court's conscience).
 
 
 11
 A recent development, however, has made it unnecessary for us to decide whether the amount received at a properly noticed sale of personal property in execution of a valid judgment must be conclusively presumed to have been reasonable. The Oregon Court of Appeals has held that the confessed judgment obtained by B & G was void because Stein was not resident or present in Multnomah County at the time the judgment was rendered. Burt & Gordon v. Stein, 876 P.2d 338 (Or.Ct.App.), petition for review denied, 882 P.2d 603 (Or.1994). B & G argues that this decision does not affect the validity of the judgment sale. We reject that argument. Whether or not a bona fide purchaser without notice at such a sale would be protected, the sale can confer no legitimacy on the actions of B & G when that sale was based on its own void judgment. "The legislature has made the decision by providing expressly that a confession of judgment taken in the wrong county is of no force or validity. It has decided that such a judgment is a nullity." Id. at 341. In light of the unequivocal ruling of the Oregon Court of Appeals, we conclude that an execution sale based on a void judgment can be given no preclusive effect so far as B & G is concerned.[3]
 
 
 12
 In the absence of any such preclusive effect, we have no difficulty in concluding that there is a genuine issue of material fact as to whether the disposal of the stock for $5,000 was reasonable.[4] The trier of fact is entitled to view the entire course of dealing between B & G and Stein to determine whether B & G received the stock without giving reasonably equivalent value. Stein's shares, purchased for $572,000 were transferred to B & G five or six weeks later against a debt of $19,403 and future services; B & G then took title to the shares a year later for $5,000 reduction in its debt; a little over a year after that B & G sold the shares for a net of $1,262,000.
 
 
 13
 Unlike the district court, we view these figures as evidence that the transfer was not for equivalent value. We conclude that the district court erred in granting summary judgment for B & G on the issue of fraudulent transfer.
 
 II. Breach of Fiduciary Duty
 
 14
 The claim of breach of fiduciary duty depends in part on the outcome of the same factual questions that must be resolved regarding the claim of fraudulent transfer. B & G contends that it simply engaged in a routine collection of fees, by accepting a security interest in the IFS stock. B & G asserts that it then exercised its option to reduce Stein's debt to judgment (by confession of judgment) and to levy on that judgment as permitted by Oregon law. See Or.Rev.Stat. § 79.5010(5).
 
 
 15
 As we have pointed out above, the validity of this argument is undercut by the fact that the Oregon Court of Appeals has held the confessed judgment to be void. Burt & Gordon v. Stein, supra. Moreover, it is not clear that B & G initially took only a security interest; the nature of the interest they took is an issue for trial.
 
 
 16
 The attorneys at B & G had a fiduciary relationship to Stein. See In re Staples, 486 P.2d 1281, 1282 (Or.1971). Their relationship to their client is similar to a trustee's relationship to a beneficiary. See id. at 1283 (explaining that, "[b]orrowing money from a client is the same as a fiduciary contracting with the beneficiary of his trust"); Restatement (Second) of Trusts, § 2, cmt. b (stating that fiduciary relationships include trustee and beneficiary, and attorney and client, although duties of trustee may be more "intensive").
 
 
 17
 "A person in a fiduciary relation to another is under a duty to act for the benefit of the other as to matters within the scope of the relation.... [The fiduciary] is under a duty not to profit at the expense of the other...." Restatement, § 2, cmt. b. If B & G took more than a security interest in the IFS stock, an issue of fact exists as to whether it charged clearly excessive fees in violation of Oregon Disciplinary Rule 2-106(A). Oregon precedent permits us to be guided by the standard of conduct set forth in disciplinary rules in determining whether a lawyer breached a fiduciary duty to a client. Kidney Ass'n of Oregon v. Ferguson, 843 P.2d 442, 445 (Or.1992).
 
 
 18
 In addition, the Gordon letter of September 16, 1988, states that in accepting the IFS stock, B & G could dispose of it "with no obligation to [Stein] to obtain a 'best price' or otherwise look after your interests." We reject the contention that B & G had no duty at all to protect the interests of its client Stein, even in a matter of its own fees. At a minimum, B & G had a duty to dispose of the stock in a commercially reasonable manner, to give effect to the letter's promise to Stein that "[a]ny funds received by Burt & Gordon, P.C. in excess of the Obligations ... shall be returned to you." Oregon law requires "best efforts to see that the highest possible price is received for the collateral." Weiss v. Northwest Acceptance Corp., 546 P.2d 1065, 1072 (Or.1976) (quoting 2 Gilmore, Security Interests in Personal Property, 1233-34 (1965)); see also UCC § 9-504(3). For reasons already stated, there is a disputed issue of fact as to whether the disposal of the stock was commercially reasonable.
 
 
 19
 We conclude that summary judgment was inappropriate on the claim of breach of fiduciary duty.[5]
 
 
 20
 III. Statute of Limitations on the Claim for Breach of Fiduciary Duty
 
 
 21
 Under Oregon law, Stein had to file his claim for breach of fiduciary duty within two years of the date on which he knew or should have known that he was damaged by B & G's breach of duty. Or.Rev.Stat. § 12.110(1); Condon v. Bank of California, 759 P.2d 1137, 1139 (Or.Ct.App.1988). Stein tolled any claims that had not yet expired when he filed for bankruptcy on July 15, 1991. See 11 U.S.C. § 108(c). Thus, trustee Mitchell still has a claim with respect to any of B & G's conduct that occurred after July 15, 1989, two years prior to the filing date, plus conduct occurring earlier than that date if Stein neither knew nor should have known that he was damaged until after July 15, 1989.
 
 
 22
 Most of the conduct alleged to have constituted a breach of fiduciary duty occurred after July 15, 1989. B & G purchased the stock at the sheriff's sale on October 31, 1989. A portion of the breach of fiduciary duty claim involves the September 15, 1988, agreement transferring the stock from Stein to B & G. Any portion of the claim specific to the September 16, 1988 transfer is not barred because it is reasonable to conclude that Stein should not have known this transfer would injure him until October 31, 1989, when B & G purchased the stock at the sheriff's sale. Until then, he could have thought the transfer was of a security interest, as B & G claims, and that proceeds in excess of outstanding fees would be returned to him upon a commercially reasonable sale of the stock. Thus it is a jury question whether Stein should have known by July 15, 1989, that he was damaged by the original transfer. The claim for breach of fiduciary duty is not time-barred as a matter of law.
 
 
 23
 IV. Breach of the Implied Covenant of Good Faith and Fair Dealing
 
 
 24
 Every contract, including the contract between B & G and Stein, contains the obligation to perform in good faith. Best v. United States National Bank of Oregon, 739 P.2d 554, 557 (Or.1987). " 'Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving "bad faith" because they violate community standards of decency, fairness or reasonableness.' " Id. (quoting Restatement (Second) of Contracts § 205, cmt. a (1979)). The good faith doctrine seeks to effectuate the reasonable contractual expectations of the parties. Id. at 558.
 
 
 25
 The conduct of B & G, set forth in the discussion of breach of fiduciary duty, also raises a genuine issue of material fact as to bad faith. There are issues of fact concerning whether B & G, by accepting a transfer of the stock, overreached by charging excessive fees, and whether it failed to dispose of the stock in a commercially reasonable manner. If these issues of fact are resolved against B & G, a rational trier of fact could further find that B & G was guilty of bad faith in its performance of the contract. Thus the summary judgment on the claim of violation of the covenant of good faith and fair dealing must be reversed.
 
 V. Appellee Gordon's Liability
 
 26
 Appellee Mark Gordon, an attorney with B & G throughout much of the period in which the firm represented Stein, argues that even if B & G is liable on one or more claims arising from the representation of Stein, Gordon himself cannot be held individually liable. We reject that contention, and reverse the summary judgment in favor of Gordon.
 
 
 27
 If the trier of fact finds that the original transfer of stock to B & G was fraudulent or a violation of fiduciary duty, there is evidence to permit Gordon to be found liable. His letter of September 16, 1988, is sufficient evidence to permit a finding that the fraud or breach was attributable to Gordon's own misconduct. As a shareholder in B & G, Gordon is personally liable for his own wrongful acts. Or.Rev.Stat. 58.185(2)(b).[6]
 
 
 28
 Gordon is also liable as a shareholder "for the negligent or wrongful acts or omissions or misconduct committed in the rendering of professional service or services on behalf of the corporation to persons who were intended to benefit...." Or.Rev.Stat. § 58.185(2)(c). " 'Professional service' means any type of personal service or services rendered in this state to the public which may be lawfully rendered only pursuant to a license." Or.Rev.Stat. § 58.015(5). Gordon contends that receipt and disposal of the stock is a mere collection service, which can be performed without a professional license.
 
 
 29
 We agree with the district court, however, that the acts in question were performed as part of a professional services contract, which could only have been entered by licensed attorneys. We will not dissect the actions that fall within the contract and require that every act be one that only a licensed professional can perform. Stein was a client at the time of delivery of the stock, the issuance of the letter explaining the effect of that delivery, and, so far as the record reveals, at the time of the purported execution sale. To the extent that these acts are found to constitute a fraudulent transfer or to violate B & G's fiduciary duty, Gordon shares in the firm's liability.
 
 
 30
 The fact that B & G did not sell the stock until after Gordon left is irrelevant. The conduct upon which liability is alleged to be based, the transfer of the stock from Stein to B & G and the disposal of the stock in the purported execution sale, occurred while Gordon was a shareholder in the firm.
 
 
 31
 There is no merit to Gordon's contention that he cannot be liable for fraudulent transfer because a creditor seeking to recover for fraudulent transfer may do so only from the first transferee or any subsequent transferee. Or.Rev.State. § 95.270(2). It is true, as Gordon says, that B & G and not he was the transferee. But Gordon is jointly and severally liable for the firm's misconduct in providing professional services under § 58.185(2)(c), and he is personally liable for his own misconduct in participation with others of the firm under § 58.185(2)(b). In light of those provisions, he need not be found to have been a transferee himself if his firm was a fraudulent transferee.
 
 
 32
 We also reject Gordon's argument that he cannot be found to be personally or jointly liable under § 58.185(2)(b) or (c) for violation of the covenant of good faith and fair dealing, because he was not a party to the contract of service between Stein and B & G. We agree that Gordon contracted with Stein only on behalf of B & G, and this fact was known to Stein. But the bad faith that underlies a violation of the duty of good faith and fair dealing qualifies as "wrongful acts" or "misconduct" within the meaning of § 58.185(2)(b) and (c), even though the duty of good faith may be contractual. Gordon as shareholder cannot, in our view, divorce himself from the alleged misconduct of B & G just because B & G's duty to its client arises from contract. The duty of good faith arises as well from law:
 
 
 33
 When we have spoken of the duty in terms of an implied "covenant of good faith and fair dealing" we were referring to a duty implied by law. Referring to it as a "covenant" may lead to confusion.
 
 
 34
 Sheets v. Knight, 779 P.2d 1000, 1008 n. 12 (Or.1989). When the duty implied by law is the duty of a professional corporation to its client, a bad faith breach of that duty is precisely the type of "misconduct" for which shareholder attorneys should be held responsible according to the terms of § 58.185.
 
 
 35
 We conclude, therefore, that the district court erred in granting summary judgment to Gordon.
 
 VI. Attorney's Fees
 
 36
 The district court awarded $170,357.50 in fees to B & G, the prevailing party in the district court proceedings. Because we reverse the order granting summary judgment to B & G, we also vacate the attorney's fees award.
 
 VII. Conclusion
 
 37
 Summary judgment for B & G and for attorney Gordon is REVERSED and the cause REMANDED for further proceedings. The attorney's fees award is VACATED.
 
 
 
 *
 Judge Tang was originally a member of this panel and heard argument in this case. He died prior to circulation of this opinion, and pursuant to General Order 3.2(g), Judge O'Scannlain was drawn as a replacement. Judge O'Scannlain listened to the tape of the oral argument, read the briefs and reviewed other materials received by other members of the panel
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Because the firm was Burt and Gordon during the period when the relevant events occurred, we will refer to the defendant firm throughout as "B & G."
 
 
 [2]
 The trustee does not appeal the district court's award of summary judgment on two additional claims
 
 
 [3]
 On remand, the district court is free to address any other effects of the decision of the Oregon Court of Appeals on the district court's decision, as the district court deems appropriate and not inconsistent with this opinion
 
 
 [4]
 In supplemental briefing, B & G contended that the commercial reasonableness of the sheriff's sale was conclusively litigated in Burt, Vetterlein & Bushnell, P.C. v. Stein, 844 P.2d 239 (Or.Ct.App.1992). We find no merit in that contention; the only claim of unreasonableness of the sale in that case was lack of notice to a guarantor. Id. at 247
 
 
 [5]
 We agree with the district court that there was insufficient evidence that B & G withdrew from representation without adequately protecting Stein's interests, or that it improperly billed Stein for work done pursuing its own interests
 
 
 [6]
 Or.Rev.Stat. § 58.185 was amended in 1993, but the amendment does not affect this case